# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

ALLWYN JOURDAN,

        Plaintiff,

   v.

ALLSTATE INSURANCE COMPANY, a
Foreign Illinois Registered Corporation, and
CONRADO YERO, INC., a Florida for Profit
Corporation,

        Defendants.

Case No. 1:18-cv-23561-KMM

## DEFENDANT ALLSTATE INSURANCE COMPANY'S
## ANSWER AND DEFENSES TO COMPLAINT

Defendant Allstate Insurance Company ("Allstate"), by and through the undersigned

counsel, hereby submits its Answer and Defenses to the Complaint filed by Plaintiff Allwyn

Jourdan ("Plaintiff"), showing the Court as follows:

### PARTIES VENUE AND JURISDICTION

**COMPLAINT ¶1:**

Plaintiff is an individual, over the age of eighteen (18), and at all times material to this
action resides in Miami-Dade County, State of Florida.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 1 of the Complaint, and therefore they are denied.

**COMPLAINT ¶2:**

Defendant, ALLSTATE, is a duly organized and registered State of Illinois Corporation,
registered to do business in all 50 States of the United States of America and thus is registered to
do business in the State of Florida as a foreign corporation with a principal address of 2775
Sanders Road, Northbrook, Illinois 60062, a mailing address of 3075 Sanders Road, H1E,
Northbrook, Illinois 60062 and maintains offices for the conduct of its business in the State of
Florida and specifically in Miami-Dade County, Florida.

**ANSWER:**

Allstate admits that it is an Illinois corporation, that it is registered to do business in the State of Florida, that it has a principal address of 2775 Sanders Road, Northbrook, Illinois 60062 and a mailing address of 3075 Sanders Road, H1E, Northbrook, Illinois 60062. Allstate further admits that it maintains offices for the conduct of its business in Miami-Dade County, Florida. The remainder of the allegations contained in Paragraph 2 of the Complaint are denied.

**COMPLAINT ¶3:**

Allstate maintains a Registered Agent Name and Address in the State of Florida of: CHIEF FINANCIAL OFFICER as P.O. Box 6200 (32314-6200) and 200 E. Gaines Street, Tallahassee, Florida 32399-0000.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 3 of the Complaint.

**COMPLAINT ¶4:**

Allstate, as a foreign corporation doing business in the State of Florida has offices, agents or other representatives in Miami-Dade County, Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 4 of the Complaint.

**COMPLAINT ¶5:**

The Court also has jurisdiction over Allstate pursuant to Florida Statute §§48.193(1)(a)(1),(4) and (7) and/or by voluntary submission.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 5 of the Complaint.

**COMPLAINT ¶6:**

Defendant, Yero, Inc., is a duly organized and registered State of Florida Corporation registered to do business in the State of Florida, with the Department of State, Division of Corporations.  Defendant, Yero, Inc. maintains a principal address of 10030 S.W. 40th Street, #A, Miami, Miami-Dade County, Florida 33165.  The Defendant, Yero, Inc. has as its Registered Agent Conrado Yero with a registered agent address of 10030 S.W. 40th Street, #A, Miami, Miami-Dade County, Florida 33165.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 6 of the Complaint, and therefore they are denied.

**COMPLAINT ¶7:**

This is an action for damages which exceeds the minimum jurisdictional limits of the Court, exclusive of interest, costs and attorney's fees.

**ANSWER:**

Allstate admits that Plaintiff has alleged damages exceeding $75,000, exclusive of interest and costs. Allstate further admits that Plaintiff's alleged damages meet the threshold for diversity jurisdiction in this Court pursuant to 28 U.S.C. § 1332. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 7 of the Complaint, they are denied.

**COMPLAINT ¶8:**

Venue is proper in MIAMI-DADE County because it is the location in which the parties to this action transacted there business dealings with one another and Allstate and Yero, Inc. maintain offices in MIAMI-DADE County for the conduct of their respective businesses in the State of Florida.

**ANSWER:**

Allstate admits that Allstate products are sold in Miami-Dade County, and further admits that at one time, Plaintiff was authorized to sell Allstate products to Allstate customers in Miami-Dade County. Allstate further admits that venue is proper in this Court, the U.S. District Court for the Southern District of Florida, Miami Division. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 8 of the Complaint, and therefore they are denied.

49055003v.1

## STATEMENT OF THE FACTS

**COMPLAINT ¶9:**

In or around the mid to late 1990's forward Allstate converted, in the State of Florida, it's employee licensed insurance agent business model and/or business structure of employee agents to that of exclusive agents as independent contractors utilizing what is known as the R3001 Exclusive Agency Agreement.  Since the inception of the Exclusive Agency business plan and model by Allstate there have been several iterations of the R3001 Exclusive Agency Agreement with different designations such as R3001, R3001A, R3001C and R3001S.

**ANSWER:**

Allstate admits that it hires independent contractors to operate as Allstate Exclusive

Agents. Allstate further admits that its business relationship with its Allstate Exclusive Agents is

governed by the R3001 Exclusive Agency Agreement, which has existed in different forms over

the years, including but not limited to the R3001S Exclusive Agency Agreement. Allstate admits

that, at all times relevant to the issues raised in Plaintiff's Complaint, Allstate's business

relationship with Plaintiff was governed by an R3001S Exclusive Agency Agreement

(hereinafter the "EA Agreement"). Allstate is without knowledge or information sufficient to

admit or deny the remaining allegations contained in Paragraph 9 of the Complaint, and therefore

they are denied.

**COMPLAINT ¶10:**

At all times material hereto the R3001 Exclusive Agency Agreement, and it's various iterations, incorporates within its terms a Supplemental Agreement and a Independent Contractors Manual, as were amended from time to time, at the discretion of Allstate and the terms thereof applied to each iteration and/or type of Exclusive Agency Agreement used since the mid to late 1990's forward by Allstate as part of its exclusive agency/independent contractor business plan and model as adopted and changed and readopted over the course of time.

**ANSWER:**

Allstate admits that a Supplement for the R3001 Agreement and an Exclusive Agency

Independent Contractor Manual were expressly incorporated into the terms of the EA Agreement

governing Allstate's relationship with Plaintiff at all times material to the issues raised in

4

Plaintiff's Complaint. The terms of those documents, collectively comprising the EA Agreement,

speak for themselves. Allstate is without knowledge or information sufficient to admit or deny

the remaining allegations contained in Paragraph 10 of the Complaint, and therefore they are

denied.

**COMPLAINT ¶11:**

Allstate as of the time of the filing of these actions markets its Exclusive Agency Program with slogans such as:

a.      "Good Builds a Life"*[1]

b.      "It's good to be your own boss"*;

c.      "Drive and discipline are good for business"*;

d.      "It's a good balance"*;

e.      "Earn a good living"*;

f.      "Live a good life"*;

g.      "A marketing powerhouse to help grow your business"*;

h.      "A brand that has your back"**[2];

i.      "Do you have what it takes?"*;

j       "How much money will I make?"*;

k.      "The sky's the limit"**;

m.      "Build a legacy"**; and

n.      "As an Agency Owner, you own an economic interest in your business[.] This gives you the freedom to sell to a qualified buyer or Allstate, or pass it on to your children or another family member."* *

---

[1] (*)  Above quotes are subject to the stated limitation of:  "Subject to all terms and conditions as outlined in the Allstate R3001 Exclusive Agency Agreement and Exclusive Agency program materials. Allstate agents are not franchisees; rather they are exclusive agent independent contractors and are not employed by Allstate. Allstate is an Equal Opportunity Company. Allstate Insurance Company, Northbrook, IL. In New Jersey, Allstate Insurance Company, Bridgewater, NJ. ©2016 Allstate".

[2] (**) Above quotes are subject to the stated limitation of:  "Subject to the terms of Allstate Agency Agreement".

49055003v.1

All of the foregoing quotes and limitations thereon are attached hereto and made apart hereof and marked as Plaintiff's Composite Exhibit "A".

**ANSWER:**

Allstate admits that in Paragraph 11, Plaintiff lists various slogans that he alleges are printed on the documents attached as Plaintiff's Composite Exhibit A. Allstate states that the terms of such documents speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 11 of the Complaint, they are denied.

**COMPLAINT ¶12:**

Allstate in its Exclusive Agency Independent Contractor's marketing materials states to prospective new Exclusive Independent Contractor Agents that the process to become an Allstate Exclusive Agent Independent Contractor "takes about three to nine months from initial interest to opening your agency's doors." See Plaintiffs Composite Exhibit "A".

**ANSWER:**

Allstate admits that Plaintiff's Composite Exhibit A appears to contain true and correct copies of certain Allstate marketing materials. The terms of these written documents speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 12 of the Complaint, they are denied.

**COMPLAINT ¶13:**

At all times material hereto Plaintiff is an individual registered with and licensed by the Florida Department of Financial Services, State of Florida to sell or offer to sell insurance and insurance related products and financial investment products.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 13 of the Complaint, and therefore they are denied.

**COMPLAINT ¶14:**

In mid to late 2012, Plaintiff became interested in becoming an Allstate Insurance agent and viewed various company marketing materials of Allstate of its Exclusive Agency Program ending with Plaintiff and Defendant entering into an R3001S Exclusive Agency Agreement dated August 1, 2013 and incorporating therein the terms of the Supplement for the R3001

Agreement dated February 1, 2013, the Exclusive Agency Independent Contractor Reference Guide dated February 25, 2013, the Independent Contractor Manual Revision Notice dated October 18, 2012, the Allstate Agency Standards Revision Notice dated October 8, 2012 and the Schedule of Commissions for the Allstate Financial Services, LLC Registered Representative Agreement (hereinafter referred to as the "Contract" or "R3001 Agreement").  All of the foregoing referenced documents are attached hereto and made apart hereof as Plaintiff's Composite Exhibit "B".[3]

## ANSWER:

Allstate admits that it entered into an R3001S Exclusive Agency Agreement with Plaintiff, effective August 1, 2013, which Allstate refers to herein as the EA Agreement (*see* Answer to Complaint ¶ 9, *supra*), and further admits that the terms outlined in the versions of Allstate's Supplement for the R3001 Agreement, Exclusive Agency Independent Contractor Manual and Agency Standards, including all relevant revisions, that were effective as of August 1, 2013 were expressly incorporated into the EA Agreement. Allstate further admits that it appears Plaintiff has attached true and correct copies of the foregoing documents as part of Plaintiff's Composite Exhibit B, and states that the terms of those documents speak for themselves. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 14 of the Complaint, and therefore they are denied.

## COMPLAINT ¶15:

Between mid to late 2012 to August 2013, Plaintiff made application to become an Allstate Exclusive Agent, Independent Contract and as required by Allstate expended money upon, without limitation,

- reserve financial bank deposits,

- attended Allstate University in the State of Illinois,

---

[3] Plaintiff has included a copy of the Allstate Financial Services, LLC schedule of Commissions as part of the Contract and Plaintiffs Composite Exhibit "B" as said document relates to the Plaintiff tenure as an Exclusive Agent with Allstate and is a part of the Allstate Exclusive Agency program but as of the time of the filing of this Complaint Plaintiff is without sufficient knowledge to name Allstate Financial Services, LLC as a named defendant herein and reserves to amend to add said company as an additional defendant pending discovery to be conducted over the course of this litigation yielding information warranting the additional party hereto.

- leased a business premises,

- established a business plan for an insurance agency selling exclusively the Allstate insurance and investment products,

- leases commercial business space, arranges for and expends money to establish utilities services for the leasehold obtained,

- engaged in the expenditure of money to market Allstate insurance and investment products and prepared to and hire employees to handle office and sales operations of an insurance agency.

**ANSWER:**

Allstate admits that Plaintiff took steps to become an Allstate Exclusive Agent and that he became an Allstate Exclusive Agent pursuant to the terms of the EA Agreement, which speak for themselves, effective August 1, 2013. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 15 of the Complaint, and therefore they are denied.

**COMPLAINT ¶16:**

Plaintiff commenced business as an Allstate Exclusive Agent on or about August 1, 2013 as a "Start Up" agent.

**ANSWER:**

Allstate admits that Plaintiff was an authorized Allstate Exclusive Agent pursuant to the terms of the EA Agreement, which speak for themselves, as of August 1, 2013. Allstate further admits that Plaintiff operated under the EA Agreement as an independent contractor tasked with building his own book of business as an Allstate Exclusive Agent. Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 18 of the Complaint, and therefore they are denied.

**COMPLAINT ¶17:**

A "Start Up" agent is an Allstate Exclusive Agent who starts his or her own insurance agency as an exclusive agent selling only Allstate insurance products as an independent

8

contractor without any policies or business earnings, commissions, or payments (hereinafter "Allstate Product"), at the time of commencing operation of an insurance agency and must go out and sell and/or produce Allstate Product new business or recaptured eligible prior Allstate Product pursuant to the terms and conditions of the R3001 Agreement and the Company.

**ANSWER:**

Allstate admits that Plaintiff has alleged his understanding of the definition of the term "Start Up agent" in Paragraph 17 of the Complaint. Allstate further admits that the terms of Plaintiff's engagement with Allstate as an Allstate Exclusive Agent were set forth in the EA Agreement, which is a written document, the terms of which speak for itself. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 17, they are denied.

**COMPLAINT ¶18:**

Between August 1, 2013 and October 14, 2015, Plaintiff operated an Allstate Exclusive Agency as an independent contractor insurance agency selling Allstate Product, building an economic interest in the Book of Business (hereinafter "Book of Business", "BOB" or "customers") in the State of Florida pursuant to the R3001 Agreement.

**ANSWER:**

Allstate admits that Plaintiff was authorized to operate as an Allstate Exclusive Agent in the capacity of an independent contractor pursuant to the terms of the EA Agreement between August 1, 2013 and October 14, 2015. Allstate further admits that Plaintiff sold Allstate products in the State of Florida pursuant to the EA Agreement, the terms of which speak for itself, between August 1, 2013 and October 14, 2015. Finally, Allstate admits that Plaintiff began building a book of business in which he retained some economic interest pursuant to the terms of the EA Agreement. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 18 of the Complaint, they are denied.

**COMPLAINT ¶19:**

In and between June, 2015 and February, 2016, Mr. Mike Sheely was associated with the Defendant, Allstate as a Field Senior Vice President in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 19 of the Complaint.

**COMPLAINT ¶20:**

In and between June, 2015 and February, 2016, Mr. Mark Canfield was associated with the Defendant, Allstate as a Territorial Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 20 of the Complaint.

**COMPLAINT ¶21:**

In and between June, 2015 and February, 2016, Janice Brown-Francois was associated with the Defendant, Allstate as a Field Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 21 of the Complaint.

**COMPLAINT ¶22:**

In and between June 2015 and February, 2016, Marcelo Beruvides was associated with the Defendant, Allstate as a Filed [sic] Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits that Marcelo Beruvides worked as a Field Sales Leader for Allstate within

the state of Florida between June 2015 and February 2016. To the extent Paragraph 22 asserts

any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶23:**

In and between June, 2015 and February, 2016, Lindsay Rivera was part of the Human Resource Officer Department for the Defendant, Allstate in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 23 of the Complaint.

**COMPLAINT ¶24:**

In and between June, 2015 and February, 2016, Laine Sutkay was part of the in house legal department for the Defendant, Allstate in the State of Florida and/or the State of Illinois.

49055003v.1

**ANSWER:**

Allstate admits that between June 2015 and February 2016, Laine Sutkay (hereinafter

"Ms. Sutkay") was an Associate Investigator for the Investigative Services Division of Allstate's

Law & Regulation Department and worked out of Allstate's corporate headquarters in

Northbrook, Illinois. To the extent Paragraph 24 asserts any additional factual allegations against

Allstate, they are denied.

**COMPLAINT ¶25:**

In and between June, 2015 and February, 2016, Helen Sylvester was associated with the
Defendant, Allstate as a Territory Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 25 of the Complaint.

**COMPLAINT ¶26:**

On or about July 29, 2015, Lindsay Rivera contacted the Plaintiff to advise him that Laine
Sutkay wanted to meet with Plaintiff at the Allstate office in Doral, Miami-Dade County,
Florida on July 30, 2015 and that he was to bring certain files of customers of the BOB generated
by his agency with him to the meeting.

**ANSWER:**

Allstate admits that a meeting was scheduled for July 30, 2015 between Plaintiff and Ms.

Sutkay. Allstate is without knowledge or information sufficient to admit or deny the remaining

allegations contained in Paragraph 26 of the Complaint, and therefore they are denied.

**COMPLAINT ¶27:**

On or about July 30, 2015, Plaintiff appeared at the Defendant, Allstate's Doral, Miami-
Dade County, Florida office for the scheduled meeting with Ms. Sutkay and was surprised that
he was not there for a meeting as represented by Ms. Rivera, but for a Spanish Inquisition
Socratic styled videotaped investigation conducted by Ms. Sutkay concerning discounts given to
certain customers of the BOB.  The videotaped inquisition ended with Ms. Sutkay requesting
additional customer files, which were provided via electronic mail by Plaintiff to Ms. Sutkay on
July 30, 2015.

49055003v.1

**ANSWER:**

Allstate admits that Plaintiff appeared at an Allstate office located in Miami-Dade County on July 30, 2015 for a meeting with Ms. Sutkay. Allstate admits that Ms. Sutkay interviewed Plaintiff during the July 30, 2015 meeting remotely from her office in Northbrook, Illinois, and that Ms. Sutkay recorded said interview. Allstate denies the remaining allegations contained in Paragraph 27 of the Complaint.

**COMPLAINT ¶28:**

Ms. Sutkay, also on July 30, 2015 independently conducted an inquest using videotape of Plaintiff's employees known as Leesday Sanmartin and Sabrina Contreras about customer files generated by Plaintiff's agency.

**ANSWER:**

Allstate admits that Ms. Sutkay also interviewed Leesday San Martin and Sabrina Contreras, who were at one time employed by Plaintiff in his capacity as an Allstate Exclusive Agent, on July 30, 2015. Allstate denies the remaining allegations contained in Paragraph 28 of the Complaint.

**COMPLAINT ¶29:**

Prior to the July 30, 2015 videotaped inquisition styled interviews of Ms. Sutkay, Janice Brown for Defendant, Allstate assured Plaintiff that the interviews to be conducted by Ms. Sutkay were routine and the chances of closing Plaintiffs office by the Defendant, Allstate were non-existent in response to Plaintiff's inquiry concerning the same and the past industry known practices of Allstate of shutting agents down and affording little to no time to obtain a buyer for the contractually provided economic interest of the exclusive agent in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 29 of the Complaint.

**COMPLAINT ¶30:**

Janice Brown, after the July 30, 2015 videotaped inquisition conducted by Ms. Sutkay for Defendant, Allstate, again represented to Plaintiff and assured Plaintiff that the inquisition conducted with Plaintiff, Leeday Sanmartin and Sabrina Contreras by Ms. Sutkay would not result in the closing of his exclusive agency with Allstate.

49055003v.1

**ANSWER:**

Allstate denies the allegations contained in Paragraph 30 of the Complaint.

**COMPLAINT ¶31:**

Based upon the representations and assurances of Ms. Brown to Plaintiff, Plaintiff did not undertake to seek a buyer of his economic interest in his exclusive agency's "Book of Business" in July, August or September 2015.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 31 of the Complaint, and therefore they are denied.

**COMPLAINT ¶32:**

On or about October 14, 2015, Plaintiff was scheduled to meet with Mark Canfield and Janice Brown at the Defendant, Allstate's Regional Office in Doral, Florida.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 32 of the Complaint, and therefore they are denied..

**COMPLAINT ¶33:**

Plaintiff met with Mark Canfield and Janice Brown at the Defendant, Allstate Regional Office in Doral, Miami-Dade County, Florida on October 14, 2015.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 33 of the Complaint, and therefore they are denied.

**COMPLAINT ¶34:**

On October 14, 2015 Plaintiff was handed a letter dated October 14, 2015 and signed by Mr. Canfield notifying Plaintiff of his termination as an Allstate Exclusive Agent, Independent Contractor and termination of the Allstate's R3001S Agreement effective immediately.  A copy of the letter of termination is attached hereto and marked Exhibit "C".

49055003v.1

**ANSWER:**

      Allstate admits that a true and correct copy of its October 14, 2015 termination letter to

Plaintiff appears to be attached as Exhibit C to Plaintiff's Complaint. The terms of that letter

speak for themselves. To the extent there are any additional factual allegations asserted against

Allstate in Paragraph 34 of the Complaint, they are denied.

**COMPLAINT ¶35:**

      The October 14, 2015, termination letter, (See Exhibit "C"), notified Plaintiff that his
R3001 Agreement was terminated by Allstate for cause.  Plaintiff disputed his agency's
termination for cause by Allstate, as it was merely a guise to eliminate his agency's right to
receive renewal commissions and receive payment for his economic interest in the BOB.

**ANSWER:**

      Allstate states that the terms of the October 14, 2015 letter speak for themselves. Allstate

denies all further allegations contained in Paragraph 35 of the Complaint.

**COMPLAINT ¶36:**

      On or about October 14, 2015, Defendant, Allstate sent its agents to retrieve all of
Allstate property, files, computers and ended Plaintiff's access to the customers in the Book of
Business effective date same.

**ANSWER:**

      Allstate admits that it terminated the EA Agreement for cause effective October 14, 2015

and exercised its rights under the EA Agreement to take over service of Plaintiff's book of

business. The terms of the EA Agreement speak for themselves. To the extent Paragraph 36

asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶37:**

      The R3001 Agreement entered into by Plaintiff and Defendant provides that Plaintiff, as
an Exclusive Agent, Independent Contract, is to have an economic interest in the Book of
Business generated by him and his agency as a start-up and provides as to how the value of the
termination payment is to be calculated regardless of how the R3001 Agreement is terminated,
meaning for cause or without cause should the Exclusive Agent elect to receive a termination
payment for such interest rather than sale the economic interest to a third party or another
Exclusive Agent, if permitted by Allstate.

**ANSWER:**

To the extent the allegations in Paragraph 37 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 37 of the Complaint, they are

denied.

**COMPLAINT ¶38:**

The R3001 Agreement provides that without regard as to the reason of termination
Plaintiff was to have either termination payment or to exercise the right to sell Plaintiff's
economic interest in the BOB.

**ANSWER:**

To the extent the allegations in Paragraph 38 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 38 of the Complaint, they are

denied.

**COMPLAINT ¶39:**

Nowhere in the R3001 Agreement are the terms of Florida Statute §626.754 mentioned,
referenced or addressed.

**ANSWER:**

To the extent the allegations in Paragraph 39 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 39 of the Complaint, they are

denied.

**COMPLAINT ¶40:**

Nowhere in the R3001 Agreement is Plaintiff or Defendant, Allstate referred to or
addressed as a "direct writing insurers" as address in Florida Statute §626.754(2).

**ANSWER:**

To the extent the allegations in Paragraph 40 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 40 of the Complaint, they are denied.

**COMPLAINT ¶41:**

Nowhere in the R3001 Agreement is Plaintiff or Defendant, Allstate referred to or addressed as "agents and insurers between whom the relationship of employer and employee exists" as address in Florida Statute §626.754(2).

**ANSWER:**

To the extent the allegations in Paragraph 41 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 41 of the Complaint, they are denied.

**COMPLAINT ¶42:**

Pursuant to the terms of the R3001 Agreement Plaintiff at all times material hereto was an exclusive agent, independent contractor of Allstate.

**ANSWER:**

Allstate admits that Plaintiff was an authorized Allstate Exclusive Agent subject to the terms of the EA Agreement between August 1, 2013 and October 14, 2015, and that during this time period, Plaintiff was an independent contractor for Allstate. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 42 of the Complaint, they are denied.

**COMPLAINT ¶43:**

Pursuant to the terms of the R3001 Agreement Plaintiff at all times material hereto was not an agent of a direct writing insurer.

**ANSWER:**

To the extent the allegations in Paragraph 43 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 43 of the Complaint, they are denied.

**COMPLAINT ¶44:**

Pursuant to the terms of the R3001 Agreement Plaintiff at all time material hereto was not an agent with Defendant, Allstate with whom an employer/employee relationship existed.

**ANSWER:**

To the extent the allegations in Paragraph 44 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 44 of the Complaint, they are denied.

**COMPLAINT ¶45:**

The language of Florida Statute §626.754(1) at all times material hereto applied to Plaintiff and Defendant, Allstate.

**ANSWER:**

Paragraph 45 of the Complaint contains a legal conclusion to which no response is required. To the extent Paragraph 45 asserts any factual allegations against Allstate, they are denied.

**COMPLAINT ¶46:**

Pursuant to the terms of the R3001 Agreement, after October 14, 2015, Defendant, Allstate prevented Plaintiff from being able to contract or service Allstate Product customers to preserve the level of sold products and secure renewals of the Book of Business.

**ANSWER:**

To the extent the allegations in Paragraph 46 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate admits that it

terminated the EA Agreement effective October 14, 2015 and exercised its rights thereunder. To

the extent there are any additional factual allegations asserted against Allstate in Paragraph 43 of

the Complaint, they are denied.

**COMPLAINT ¶47:**

Pursuant to the terms of the R3001 Agreement, after October 14, 2015, Defendant,
Allstate prevented Plaintiff from being able to contract or service Allstate Product customer to
preserve the value and level of his economic interest in the BOB for sale to an approved outside
party.

**ANSWER:**

To the extent the allegations in Paragraph 47 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate admits that it

terminated the EA Agreement effective October 14, 2015 and exercised its rights thereunder. To

the extent there are any additional factual allegations asserted against Allstate in Paragraph 47 of

the Complaint, they are denied.

**COMPLAINT ¶48:**

Pursuant to the terms of the R3001 Agreement, Allstate barred and prohibited Plaintiff
from any contact with customer in the BOB on October 14, 2015 and at all times thereafter.

**ANSWER:**

To the extent the allegations in Paragraph 48 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate admits that it

terminated the EA Agreement effective October 14, 2015 and exercised its rights thereunder. To

the extent there are any additional factual allegations asserted against Allstate in Paragraph 48 of

the Complaint, they are denied.

49055003v.1

**COMPLAINT ¶49:**

The language and specific protections afforded to Plaintiff by Florida Statute §626.754(1) were not acknowledged, provided or followed by the Defendant, Allstate after October 14, 2015.

**ANSWER:**

Paragraph 49 of the Complaint contains a legal conclusion to which no response is

required. To the extent Paragraph 49 asserts any factual allegations against Allstate, they are

denied.

**COMPLAINT ¶50:**

At the time of the October 14, 2015 meeting with Mr. Canfield and Ms. Brown at the Allstate office in Doral, Miami-Dade County, Florida, Plaintiff was informed by Mr. Canfield that Plaintiff was to receive renewal business of the Book of Business for the ensuing 90 days and that Plaintiff was to be afforded 90 days within which to sell his economic interest in the BOB or, if eligible, receive a termination payment at Plaintiff's election.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

As of the date of the filing of this Complaint Allstate has failed and thus refused to pay to Plaintiff any earned commissions, credited any renewal business to the BOB accruing during the 90 days as he was advised by Allstate's Mark Canfield on October 14, 2015.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 51 of the Complaint.

**COMPLAINT ¶52:**

The R3001 Agreement is silent as to the origin of the 90 day period Plaintiff was afforded by the Defendant, Allstate through its agent Mr. Canfield to sell his economic interest in the BOB.

**ANSWER:**

To the extent the allegations in Paragraph 52 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

49055003v.1

additional factual allegations asserted against Allstate in Paragraph 52 of the Complaint, they are

denied.

## COMPLAINT ¶53:

Prior iterations of the R3001 Agreement did contain a 90 day period for the sale of an exclusive agent's interest in the BOB post termination.

## ANSWER:

"Prior iterations of the R3001 Agreement" is vague and ambiguous, and thus Allstate is

without knowledge or information sufficient to admit or deny the allegations contained in

Paragraph 53 of the Complaint. The allegations are denied on that basis. Furthermore, the

allegations contained in Paragraph 53 rely upon interpretation of a written document, the terms

of which speak for themselves. To the extent Paragraph 53 of the Complaint asserts any

additional factual allegations against Allstate, they are denied.

## COMPLAINT ¶54:

At the time of the October 14, 2015 meeting with Mr. Canfield and Ms. Brown at the Allstate office in Doral, Florida, Plaintiff asked if he would be permitted by Allstate to sell his economic interest in the Book of Business to another Allstate Exclusive Agent, Independent Contractor and was told by Mr. Canfield for the Defendant, Allstate that Allstate would only consider "outside" buyers and denied Plaintiff's request to sell his economic interest in the Book of Business to another already existing Allstate Exclusive Agent, Independent Contractor.  There is no provision in the R3001 Agreement which restricts Plaintiff to only being able to sell his contractually bargained for right to sell his economic interest in the BOB to only "outside" buyers.

## ANSWER:

To the extent the allegations in Paragraph 54 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate denies the remaining

allegations contained in Paragraph 54 of the Complaint.

## COMPLAINT ¶55:

As of December 31, 2015, Plaintiff's annual generated Product premiums or the Book of Business yielded approximately $1,907,497.00 dollars in premium payment to Allstate annually.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 55 of the Complaint, and therefore they are denied.

**COMPLAINT ¶56:**

Between August 1, 2013 and December 31, 2015, the Book of Business generated by Plaintiff had an average renewal rate of 93% or better.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 56 of the Complaint, and therefore they are denied.

**COMPLAINT ¶57:**

In Start-Up costs for Allstate Exclusive Agency Plaintiff expended in excess of $550,000.00.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 57 of the Complaint, and therefore they are denied.

**COMPLAINT ¶58:**

Allstate, in the R3001 Agreement, reserves sole and exclusive discretion to approve or not the sale to a proposed buyer of the economic interest of the Exclusive Agency, Independent Contractor Book of Business should the agent, such as Plaintiff, make the election to sell same.

**ANSWER:**

To the extent the allegations in Paragraph 58 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 58 of the Complaint, they are

denied.

**COMPLAINT ¶59:**

Plaintiff elected to exercise his right to sell his economic interest in the BOB and between October 14, 2015 and January 31, 2016, Plaintiff presented three (3) "outside" buyers to Allstate

to purchase his economic interest in the Book of Business.  All three (3) of Plaintiff's buyers were rejected or not approved by Allstate during the 90 day period.

**ANSWER:**

Allstate admits that Plaintiff proposed the names of three potential buyers for the economic interest in Plaintiff's book of business via email on January 22, 2016. Allstate further admits that it did not approve sale to any of those individuals pursuant to its rights under the EA Agreement. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 59 of the Complaint, and therefore they are denied.

**COMPLAINT ¶60:**

The R3001 Agreement is silent as to what is to come of Plaintiff's economic interest in the Book of Business in the event it is not sold to an Allstate approved "outside" buyer.

**ANSWER:**

To the extent the allegations in Paragraph 60 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 60 of the Complaint, they are denied.

**COMPLAINT ¶61:**

Allstate took over the servicing of customer and Allstate Products, including but not limited to the renewals thereof of the Book of Business from Plaintiff as of October 14, 2015.

**ANSWER:**

Allstate admits that it began servicing individuals previously serviced by Plaintiff upon termination of the EA Agreement on October 14, 2015. To the extent Paragraph 61 of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶62:**

Allstate barred and prohibited Plaintiff from any contact with customer in the BOB on October 14, 2015 and at all times thereafter.

**ANSWER:**

Allstate admits that it terminated the EA Agreement for cause as of October 14, 2015,

and subsequently exercised its post-termination rights under the EA Agreement. Allstate denies

the remaining allegations contained in Paragraph 62 of the Complaint.

**COMPLAINT ¶63:**

The R3001 Agreement provides that Allstate has ownership of the Allstate Product and
the customer information in a BOB and that the Plaintiff has the right to sell his or her economic
interest in a BOB to an Allstate approved buyer of such interest.

**ANSWER:**

To the extent the allegations in Paragraph 63 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 63 of the Complaint, they are

denied.

**COMPLAINT ¶64:**

Ninety (90) days from October 14, 2015 is to January 12, 2016.

**ANSWER:**

Allstate admits that 90 calendar days from October 14, 2015 is January 12, 2016.

**COMPLAINT ¶65:**

The October 14, 2015 termination letter provided Plaintiff until February 1, 2016 to
complete the sale of his economic interest in the BOB.

**ANSWER:**

To the extent the allegations contained in Paragraph 65 purport to interpret the terms set

forth in Allstate's October 14, 2015 termination letter, the letter is a written document, the terms

of which can speak for themselves. To the extent Paragraph 65 of the Complaint asserts any

additional factual allegations against Allstate, they are denied.

49055003v.1

**COMPLAINT ¶66:**

The terms of the R3001 Agreement entered into by the Plaintiff and Allstate require the Plaintiff to be vested in order to be eligible to receive a termination payment.

**ANSWER:**

To the extent the allegations in Paragraph 66 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 66 of the Complaint, they are

denied.

**COMPLAINT ¶67:**

Plaintiff's exclusive agency as a start-up was required under the R3001 Agreement to vest for five (5) years before being eligible for Plaintiff to be entitled to elect a termination payment from Allstate upon termination of the R3001 Agreement.

**ANSWER:**

To the extent the allegations in Paragraph 67 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 67 of the Complaint, they are

denied.

**COMPLAINT ¶68:**

Plaintiffs exclusive agency as of October 14, 2015 was not vested for five (5) years.

**ANSWER:**

Allstate admits that Plaintiff had not operated as an Allstate Exclusive Agent for five

years as of October 14, 2015. To the extent the allegations contained in Paragraph 68 purport to

interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves.

To the extent there are any additional factual allegations asserted against Allstate in Paragraph 68

of the Complaint, they are denied.

**COMPLAINT ¶69:**

Pursuant to the terms of the R3001 Agreement, Plaintiff on October 14, 2015 or at any time thereafter was not entitled to elect to receive a termination payment from Allstate.  The only way for Plaintiff to be compensated for the business generated by his agency for his agency and Allstate was to sell Plaintiffs economic interest he contractually interest in the BOB to an "outside" buyer.

**ANSWER:**

To the extent the allegations in Paragraph 69 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 69 of the Complaint, they are

denied.

**COMPLAINT ¶70:**

On February 8, 2016, Plaintiff was notified by Helen Sylvester, Territory Sales Leader for Defendant, Allstate that Plaintiff's termination was effective January 31, 2016, that Plaintiff did not present an approved buyer for his economic interest in the BOB during the imposed 90 day period or elect to receive a termination payment same and that no extension to the 90 day period would be given to Plaintiff to find a buyer of his economic interest in the BOB.  A copy of Ms. Sylvester's February 8, 2016 email to Plaintiff is attached and marked Exhibit "D".

**ANSWER:**

Allstate admits that a true and correct copy of a February 8, 2016 email communication

from Helen Sylvester to Plaintiff appears to be attached to the Complaint as Exhibit D. The terms

of this written document speak for themselves. To the extent Paragraph 70 of the Complaint

asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶71:**

At all times material hereto Conrado, Yero was a State of Florida licensed insurance agent and is an Allstate Exclusive Agent, Independent Contractor.

**ANSWER:**

Allstate admits that the allegations contained in Paragraph 71 of the Complaint.

**COMPLAINT ¶72:**

At all times material hereto Conrado Yero is the principal of the Defendant, Yero, Inc.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 72 of the Complaint, and therefore they are denied.

**COMPLAINT ¶73:**

At all times material hereto Defendant, Yero, Inc. is not itself independently licensed to sell or offer for sale insurance or financial investment products, including the Defendant, Allstate's Products by the State of Florida in the State of Florida.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 73 of the Complaint, and therefore they are denied.

**COMPLAINT ¶74:**

On January 25, 2016, Conrado Yero signed a letter as an "Allstate Exclusive Agent" for himself as a licensed agent and for and on behalf of Defendant, Yero, Inc., addressed to Dario Rios directly soliciting Dario Rios away from the BOB generated by Plaintiff of the Defendant, Allstate's Products. A copy of the January 25, 2016 letter is attached and marked Exhibit "E".

**ANSWER:**

Allstate admits that Conrado Yero, on behalf of Conrado Yero, Inc. and in his capacity as

an Allstate Exclusive Agent, sent a letter to Allstate customer Dario Rios on or about January 25,

2016, and further admits that it appears a true and correct copy of this letter is attached to the

Complaint as Exhibit E. To the extent the allegations in Paragraph 74 of the Complaint purport

to interpret or characterize the contents of that letter, Allstate states that the terms of the

document speak for itself. Allstate denies all remaining allegations contained in Paragraph 74 of

the Complaint.

49055003v.1

**COMPLAINT ¶75:**

On January 25, 2016, Dario Rios was a customer of Allstate and a part of the economic interest of the BOB in which Plaintiff was marketing for sale during the period provided by Allstate post October 14, 2015.

**ANSWER:**

Allstate admits that an individual named Dario Rios was an Allstate customer on or about January 25, 2016. Allstate denies all remaining allegations contained in Paragraph 75 of the Complaint.

**COMPLAINT ¶76:**

On January 25, 2016, Defendant, Allstate knew Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest therein.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 76 of the Complaint.

**COMPLAINT ¶77:**

On January 25, 2016, Defendant, Yero, Inc., knew Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest therein.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 77 of the Complaint, and therefore they are denied.

**COMPLAINT ¶78:**

On January 25, 2016, Defendant, Allstate knew that Plaintiff was not vested for five (5) years and not entitled to elect to receive a termination payment.

**ANSWER:**

Allstate admits that on or about January 25, 2016, Allstate knew that Plaintiff had not been operating as an Allstate Exclusive Agent for a period of five years. To the extent Paragraph 78 asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶79:**

On January 25, 2016, Defendant, Allstate knew that it had prohibited Plaintiff from selling his economic interest in the BOB to other existing Allstate exclusive agents.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 79 of the Complaint.

**COMPLAINT ¶80:**

On October 14, 2016, Defendant, Allstate knew that it could take an outside buyer three (3) to nine (9) months to be approved, train, set-up and open an Exclusive Agency, Independent Contractor business selling or offering for sale Allstate Products to consumers.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

On January 25, 2016, Defendant, Allstate knew that it had the contractual right to approve or disapprove buyers procured by Plaintiff and that it had already disapproved two (2) of Plaintiffs three (3) proposed buyers of his economic interest in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 81 of the Complaint.

**COMPLAINT ¶82:**

On or before January 25, 2016, Defendant, Allstate made Conrado Yero for Defendant, Yero, Inc., aware of the customers or some of the customers in the BOB generated by Plaintiff as a start-up exclusive agent, independent contractor.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 82 of the Complaint.

**COMPLAINT ¶83:**

On or before January 25, 2016, Defendant, Allstate disclosed the name, address, policy information of Dario Rios to Conrado Yero and thus the Defendant, Yero, Inc.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 83 of the Complaint.

49055003v.1

**COMPLAINT ¶84:**

On January 25, 2016, Conrado Yero and thus Defendant, Yero, Inc., knew it was directly soliciting customers of the BOB in which Plaintiff was trying to sell his economic interest in to outside buyers.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 84 of the Complaint, and therefore they are denied.

**COMPLAINT ¶85:**

At no time material hereto were Conrado Yero or Yero, Inc., an "outside" buyer.

**ANSWER:**

Allstate admits that Defendant Conrado Yero, Inc. was licensed to sell Allstate products

during the period of time material to the issues raised in the Complaint. To the extent Paragraph

85 of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶86:**

At no time material hereto, did Plaintiff ever contact or discuss the sale of his economic interest in the BOB with or to Conrado Yero or the Defendant, Yero, Inc., with the Defendant, Allstate, Conrado Yero and/or the Defendant, Yero, Inc.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 86 of the Complaint, and therefore they are denied.

**COMPLAINT ¶87:**

Conrado Yero and thus Defendant, Yero, Inc., has the same right to sell his/its economic interest in the BOB generated by him/it or receive, if eligible upon vesting, a termination payment should his/its R3001 Agreement be terminated.

**ANSWER:**

To the extent the allegations in Paragraph 87 purport to interpret the terms of an

agreement between Allstate and Yero, these allegations are vague and ambiguous, because they

do not refer to a specific contract. And, in any event, the terms of such a contract would speak

for themselves. Therefore, Allstate is without knowledge or information sufficient to admit or

deny the allegations contained in Paragraph 87 of the Complaint. They are denied on that basis.

**COMPLAINT ¶88:**

The value of the BOB for the termination payment is dictated by the terms of the R3001 Agreement, one component of which is the amount of premiums earned and received by Allstate over a specific period of time from the BOB of an exclusive agent.

**ANSWER:**

Allstate admits that it values economic interest in Allstate Exclusive Agents' books of

business using guidelines set forth in each respective Allstate Exclusive Agent's contract with

Allstate. The terms of such agreements speak for themselves. To the extent Paragraph 88 asserts

any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶89:**

Defendant, Yero, Inc., within the 90 day period Plaintiff was allotted to sell his economic interest in the BOB, directly solicit the customers in the BOB in which Plaintiff had a contractual economic interest pursuant to the terms of the R3001 Agreement.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 89 of the Complaint, and therefore they are denied.

**COMPLAINT ¶90:**

Defendant, Yero, Inc., knew of or was informed by the Defendant, Allstate of the termination of the Plaintiff as an Exclusive Allstate Agent and the termination of the Plaintiffs R3001 Agreement with the Defendant, Allstate.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 90 of the Complaint, and therefore they are denied.

**COMPLAINT ¶91:**

Defendant, Yero, Inc., directly solicited the customers in the BOB generated by Plaintiff in January 2016 knowing Plaintiff was attempting to sell his economic interest in the BOB.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 91 of the Complaint, and therefore they are denied.

**COMPLAINT ¶92:**

On October 14, 2015, Defendant, Allstate knew that it had contractually prevented the Plaintiff from being able to elect to receive a termination payment as Plaintiff was not vested.

**ANSWER:**

To the extent the allegations in Paragraph 92 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate denies the remaining

allegations contained in Paragraph 92 of the Complaint.

**COMPLAINT ¶93:**

On October 14, 2015, Defendant, Allstate knew that it could contractually prevent the Plaintiff from realizing the benefit of his bargain by the sale of his economic interest in the BOB as in the R3001 Agreement it had reserved unto itself the absolute right to approve or disapprove of any buyer of the economic interest of the Plaintiff in the BOB and at no time did Allstate offer to purchase the economic interest as represented in its solicitation materials.  See Exhibit "A" and Paragraph 11. n. above.

**ANSWER:**

To the extent the allegations in Paragraph 93 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate denies the remaining

allegations contained in Paragraph 93 of the Complaint.

**COMPLAINT ¶94:**

From October 14, 2015 to January 31, 2016, Defendant, Allstate rejected all three buyers Plaintiff presented for approval of Allstate to buy Plaintiffs economic interest in the BOB.

**ANSWER:**

Allstate admits that it rejected three proposed buyers presented by Plaintiff prior to

January 31, 2016. Allstate denies all remaining allegations contained in Paragraph 94 of the

Complaint.

**COMPLAINT ¶95:**

All three "outside" buyers of the economic interest of the Plaintiff in the BOB as
submitted by Plaintiff for approval within the 90 day allotted period were capable of purchasing
Plaintiffs economic interest and had made formal offers to Plaintiff.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 95 of the Complaint, and therefore they are denied.

**COMPLAINT ¶96:**

Defendant, Allstate refused to extend the time for Plaintiff to sell his economic interest
after the 90 day allotted period acknowledging in said refusal that it had allowed others
extensions of time but for reasons stated in the declination email of Ms. Sylvester for the
Defendant, Allstate, Plaintiff was not to be afforded such courtesies as had been afforded to
others.  See Exhibit D attached hereto.

**ANSWER:**

Allstate admits that it did not extend Plaintiff's deadline to sell his economic interest in

his Allstate book of business. All other allegations contained in Paragraph 96 of the Complaint

are denied.

**COMPLAINT ¶97:**

The terms of the R3001 Agreement affording the Defendant, Allstate the absolute right to
approve or disapprove of the buyer to be procured by Plaintiff for the purchase of his economic
interest in the BOB and in doing so gave Allstate substantial discretion to promote its own self-
interest.

**ANSWER:**

To the extent the allegations in Paragraph 97 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 97 of the Complaint, they are

denied.

**COMPLAINT ¶98:**

The terms of the R3001 Agreement is silent with regard to the methodology or standards to be used by Allstate when exercising its right to approve or disapprove of the buyer to be procured by Plaintiff for the purchase of his economic interest in the BOB during the allotted 90 day time period.

**ANSWER:**

To the extent the allegations in Paragraph 98 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 98 of the Complaint, they are

denied.

**COMPLAINT ¶99:**

The terms of the R3001 Agreement is silent with regard to the methodology or standards to be used by Allstate when exercising its discretion of whether to allow Plaintiff an extension of the 90 day allotted period for the Plaintiff to procure and sell his economic interest in the BOB.

**ANSWER:**

To the extent the allegations in Paragraph 99 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 99 of the Complaint, they are

denied.

**COMPLAINT ¶100:**

Plaintiff, at all times material hereto had a legitimate expectation that Allstate would not take an opportunistic advantage due to the reservation of the absolute right to approve or disapprove buyer(s) of his economic interest in the BOB.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 100 of the Complaint, and therefore they are denied.

**COMPLAINT ¶101:**

Plaintiff, at all times material hereto, had a legitimate expectation that Allstate would not take an opportunistic advantage when exercising its discretion to allow Plaintiff an extension of the 90 day allotted time period for the Plaintiff to sell his economic interest in the BOB.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 101 of the Complaint, and therefore they are denied.

**COMPLAINT ¶102:**

Insurance Industry commentators, watch-dogs, reporters and investment analysis have over the course of the most recent several years or since 2011 repeatedly discussed, disclosed and reported of Defendant, Allstate business practice of terminating smaller start-up Exclusive Allstate Agents and consolidating the Start-up's BOBS with other larger agencies for financial gain and benefit to itself.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 102 of the Complaint, and therefore they are denied.

**COMPLAINT ¶103:**

Defendant, Allstate at all times material hereto, by denying Plaintiff access to the customers in the BOB after October 14, 2015 denied Plaintiff of his rights provided to Plaintiff by Florida Statute §626.754.

**ANSWER:**

The allegations contained in Paragraph 103 of the Complaint constitute a legal conclusion

to which no response is required. To the extent Paragraph 103 of the Complaint asserts any

additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶104:**

All conditions precedent to the bringing of this action have been met or waived.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 104 of the Complaint.

**COMPLAINT ¶105:**

Florida Statute §626.754 provides in pertinent part:

Rights of agent following termination of appointment.

(1)     Following the termination of his or her agency appointment as to
an insurer, the agent may for the period herein provided continue to service, and
receive from the insurer commissions or other compensation relative to, policies
written by him or her for the insurer during the existence of the appointment.  The
Agent may countersign all certificates or endorsements necessary to continue such
policies to the expiration date thereof, including renewal certificates or
endorsements necessary to continue such policies the expiration date thereof,
including renewal option periods, and collect and remit premiums due thereon,
but shall not otherwise, except with the consent of the insurer, change or modify
the policy in any way nor increase the hazards insured against therein.

(2)     This section does not apply as to agents of direct writing insurers
or to agents and insurers between whom the relationship of employer and
employee exists.

**ANSWER:**

Allstate admits that Plaintiff cites to statutory language from the Florida Code in

Paragraph 105 of the Complaint, which speaks for itself. To the extent Paragraph 105 contains

any factual allegations against Allstate, they are denied.

**COUNT I**
**BREACH OF CONTRACT**

**COMPLAINT ¶106:**

Plaintiffs expressly realleges and reincorporates paragraphs 1, 2, 3, 4, 5, 7-69, 75, 77, 78,
79, 80, 81, 83, 84, 86, and 90-105 above as if fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing

allegations as if set forth herein in full.

**COMPLAINT ¶107:**

At all times material hereto the R3001 Agreement by and between the Plaintiff and the
Defendant, Allstate was a valid contract binding upon the Plaintiff and the Defendant, Allstate.

35

**ANSWER:**

Allstate admits the allegations contained in Paragraph 107 of the Complaint.

**COMPLAINT ¶108:**

Plaintiff and Defendant, Allstate contracted for the Plaintiff to be able to receive the benefit of an economic interest in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 108 of the Complaint.

**COMPLAINT ¶109:**

Plaintiff was permitted by Allstate to market his economic interest in the BOB to "outside" buyers and did market his economic interest to "outside" buyers as permitted by Allstate from October 14, 2015 to January 31, 2016.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 109 of the Complaint, and therefore they are denied.

**COMPLAINT ¶110:**

Plaintiff was prevented by the Defendant, Allstate from marketing and/or selling his economic interest in the BOB after January 31, 2016.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 110 of the Complaint.

**COMPLAINT ¶111:**

Defendant, Allstate breached the R3001 Agreement with Plaintiff by not permitting Plaintiff to market the sale and purchase of the economic interest without interferences of itself and other Allstate agents by direct solicitation of customers in the BOB during the 90 day period, by intentionally denying the purchase of the economic interest to other existing Allstate agents, by promoting its own self financial interest to the detriment of Plaintiff by requiring the buyer of the economic interest be an "outside" buyer, by failing to pay any commissions and accord renewal business to the BOB for the 90 day period as expressed to Plaintiff, at Plaintiff's October 14, 2015 with Defendant, Allstate's representatives and/or as provided by State law, and by such other actions which have been stated in other paragraphs of this Complaint as incorporated within the Count as stated in paragraph 105 above.

49055003v.1

**ANSWER:**

Allstate denies the allegations contained in Paragraph 111 of the Complaint.

**COMPLAINT ¶112:**

The R3001 Agreement provisions do not modify, contravene or waive the provisions of Florida Statute §625.754.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 112 of the Complaint.

**COMPLAINT ¶113:**

Defendant, Allstate's breaches of the R3001 Agreement and its failure to follow the provisions of Florida Statute §625.754 constitute material breaches of the R3001 Agreement.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 113 of the Complaint.

**COMPLAINT ¶114:**

Plaintiff has suffered damage as a result of Defendant, Allstate's material breaches of the R3001 Agreement.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 114 of the Complaint.

**COMPLAINT ¶115:**

Plaintiff has suffered damages as a result of Defendant, Allstate's material breach of the provision of Florida Statute §625.754.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 115 of the Complaint.

**COMPLAINT ¶116:**

Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 116 of the Complaint, and therefore they are denied.

**COMPLAINT ¶117:**

Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable provisions of the R3001 Agreement and governing provisions of Florida Law.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 117 of the Complaint.

**COMPLAINT ¶118:**

Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**ANSWER:**

Paragraph 118 of the Complaint does not contain any allegations against Allstate to which a response is required. To the extent Paragraph 118 does contain factual allegations against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of punitive damages pursuant to §762.72 Florida Statutes.

**COUNT II:**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH**
**AND FAIR DEALING**

**COMPLAINT ¶119:**

Plaintiffs expressly realleges and reincorporates paragraphs 1-5, 7-69, 75, 77, 78, 79, 80, 81, 83, 84, 86, 90-105 above as if fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing allegations as if set forth herein in full.

49055003v.1

**COMPLAINT ¶120:**

Plaintiff and Defendant, Allstate entered into a contract referred to herein as R3001 Agreement.

**ANSWER:**

Allstate admits it entered into the EA Agreement with Plaintiff, effective August 1, 2013,

and that such contract is a valid and enforceable contract. To the extent Paragraph 120 of the

Complaint asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶121:**

Plaintiff did all, or substantially all, of the significant things that the R3001 Agreement required of him to do or was excused by the Defendant, Allstate from having to do those things required of him to market and sell his economic interest in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 121 of the Complaint.

**COMPLAINT ¶122:**

Defendant, Allstate's actions and/or omissions unfairly interfered with Plaintiff's receipt of the R3001 Agreement benefits, i.e. the sale of the economic interest in the BOB post termination of the R3001 Agreement by either party thereto with or without cause.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 122 of the Complaint.

**COMPLAINT ¶123:**

Defendant, Allstate's conduct did not comport with Plaintiff's reasonable contractual expectations under the R3001 Agreement as bargained by the parties thereto.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 123 of the Complaint, and therefore they are denied.

**COMPLAINT ¶124:**

Plaintiff has been harmed and damaged by the conduct of the Defendant, Allstate.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 124 of the Complaint.

**COMPLAINT ¶125:**

Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 123 of the Complaint, and therefore they are denied.

**COMPLAINT ¶126:**

Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable provisions of the R3001 Agreement and governing provisions of Florida Law.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 126 of the Complaint.

**COMPLAINT ¶127:**

Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**ANSWER:**

Paragraph 127 of the Complaint does not contain any allegations against Allstate to

which a response is required. To the extent Paragraph 127 does contain factual allegations

against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of

punitive damages pursuant to §762.72 Florida Statutes.

**COUNT III:**
**VIOLATION OF FLORIDA'S DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**

**COMPLAINT ¶128:**

Plaintiffs expressly realleges and reincorporates paragraphs 1, 2, 3, 4, 5, 7-69, 75, 77, 78, 79, 80, 81, 83, 84, 86, 90-105 above as if fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing

allegations as if set forth herein in full.

**COMPLAINT ¶129:**

At all times material hereto Plaintiff was a "consumer" as defined in Florida Statute, Title XXXIII Regulation of Trade, Commerce, Investments, Solicitations, Chapter 501 Consumer Protection Part II, of the Florida Deceptive and Unfair Trade Practices (Act) (hereinafter "the Act") (§§ 501.201-501.213, § 501.203(7), as "individual".

**ANSWER:**

Allstate denies the allegations contained in Paragraph 129 of the Complaint.

**COMPLAINT ¶130:**

At all times material hereto Plaintiff was an "interested party or person" as defined in the Act, § 501.203 (6), as both an interested party and person affected by a violation of the Act.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 130 of the Complaint.

**COMPLAINT ¶131:**

At all times material hereto Allstate engaged in "trade or commerce," as defined in the Act, § 501.203 (8), by advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or an property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever, situated, including the conduct of any trade or commerce, however denominated.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 131 of the Complaint.

49055003v.1

**COMPLAINT ¶132:**

At all times Allstate offered a service in the form of insurance policies for customers procured by Plaintiff as an Exclusive Agent with Allstate and is a part of the Allstate Exclusive Agency program.

**ANSWER:**

Allstate admits that Plaintiff operated as an authorized Allstate Exclusive Agent between August 1, 2013 and October 14, 2015, and admits that during that time, Plaintiff was permitted to sell Allstate products and services pursuant to the terms of the EA Agreement. To the extent Paragraph 132 of the Complaint contains additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶133:**

At all times material hereto Allstate engaged in the aforesaid trade or commerce with a "thing of value" as defined in the Act, § 501.203 (9) to include, without limitation, moneys, certificates, benefits, credentials, economic interest, or professional opportunity further included, without limitation the ability to solicit the general public to purchase the insurance and/or investment products offered by the Defendant and the right to receive remuneration in connection with the named activity on a recurring basis and the opportunity to build a book of business, and sell such interest or receive a termination payment pursuant to the terms of the R3001 Agreement.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 133 of the Complaint.

**COMPLAINT ¶134:**

At all times material Allstate violated the Act § 501.204 (1) and (2) by engaging in unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 134 of the Complaint.

**COMPLAINT ¶135:**

At all times material Plaintiff was misled as a consumer and he has been aggrieved by Allstate's violations of the Act.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 135 of the Complaint.

**COMPLAINT ¶136:**

At all times material Plaintiff acted reasonably in the circumstances.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 136 of the Complaint.

**COMPLAINT ¶137:**

At all times material the aforementioned and stated conduct, material misrepresentations and material omissions were unconscionable, unfair, deceptive, and likely to cause injury to a reasonable relying consumer.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 137 of the Complaint.

**COMPLAINT ¶138:**

At all times material, the aforesaid and stated conduct, material misrepresentations, and material omissions and nondisclosures were likely to mislead a consumer.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 138 of the Complaint.

**COMPLAINT ¶139:**

As a direct and proximate result of Allstate's violation of the Act, Plaintiff has been damaged.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 139 of the Complaint.

**COMPLAINT ¶140:**

The provisions of Florida Statute §501.212(4)(a) does not apply to this action as the matters addressed herein are not regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission of the State of Florida.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 140 of the Complaint.

49055003v.1

**COMPLAINT ¶141:**

The Plaintiff has had to retain the undersigned attorneys to represent him in connection with this matter and is responsible and obligated to pay the same a reasonable attorney's fee for the services rendered in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 141 of the Complaint, and therefore they are denied.

**COMPLAINT ¶142:**

Pursuant to Florida Statute § 501.211 because the Plaintiff have suffered losses as a result of Allstate's violation of the Act, he is entitled to recover actual damages, plus attorney's fees and court costs as provided in Florida Statute § 501.2105 from Allstate.

**ANSWER:**

Paragraph 142 of the Complaint does not contain any allegations against Allstate to

which a response is required. To the extent Paragraph 142 does contain factual allegations

against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of

damages, fees, or costs pursuant to Florida Statute § 501.211.

**COUNT IV:**
**TORTIOUS INTERFERENCE WITH**
**BUSINESS CONTRACTUAL RELATIONSHIP**

**COMPLAINT ¶143:**

Plaintiff expressly realleges and reincorporates paragraphs 1-18, 34, 35, 36, 37, 38, 42, 54, 55, 62, 63, 64, 70, 71, 72, 73, 74, 76, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89 and 103 above, as if more fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing

allegations as if set forth herein in full.

**COMPLAINT ¶144:**

Prior to the solicitation of Dario Rios and upon information and belief other customers in the BOB in which Plaintiff had an economic interest, Plaintiff and the Defendant, Allstate had a business relationship existing between them in which Defendant, Yero, Inc. was aware.

**ANSWER:**

Allstate admits that it was party to a contract with Plaintiff, *i.e.*, the EA Agreement,

between August 1, 2013 and October 14, 2015. To the extent Paragraph 144 of the Complaint

asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶145:**

The business relationship referred to in Paragraph 141., above was an actual identifiable agreement for Plaintiff to be able to market and sell his economic interest in the BOB to an "outside" buyer intact without erosion by solicitation of customer within or identified to the BOB, thus, holding intact the continuity and marketability of the economic interest to potential "outside" buyers at a level of value dictated within the market therefore.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 145 of the complaint.

**COMPLAINT ¶146:**

Defendant, Yero, Inc.'s principal, Conrado Yero, as an Exclusive Allstate Agent independent contractor himself had at all times material hereto knowledge of Plaintiffs economic interest itself having the same or substantially similar business relationship with the Defendant, Allstate himself as the Plaintiff.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 146 of the Complaint, and therefore they are denied.

**COMPLAINT ¶147:**

Through its direct solicitation of customer in the BOB of Allstate Products in which comprised Plaintiff's economic interest, Defendant, Yero, Inc. intentionally and unjustifiably interfered with the relationship referred to in Paragraph 141, supra.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 147 of the Complaint.

49055003v.1

**COMPLAINT ¶148:**

As a direct result of the interference, there have been breaches of the relationship referred to in Paragraph 141, supra, which include but are not limited to the difficulty of Plaintiff to attract "outside" buyers for the purchase his economic interest in the BOB due to the aggressive and unwarranted solicitation of customers in the BOB during the 90 day period Plaintiff was given by the Defendant, Allstate to sell his economic interest to only an "outside" buyer.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 148 of the Complaint.

**COMPLAINT ¶149:**

Also, but not limited thereto, because Defendant, Yero, Inc. was actively soliciting customer away from the BOB in which Plaintiff had an economic interest, Defendant, Allstate was, upon information and belief disinclined to acquiesce to Plaintiff's request to grant an extension of the 90 day period because Allstate already knew that the Defendant, Yero, Inc. was actively seeking to convert the customers of the BOB built by Plaintiff for the BOB it maintained its own economic interest.  Accordingly, Defendant, Yero, Inc.'s actions in this matter had made Plaintiff economic interest difficult to market and sell to an "outside" buyer and also less financially lucrative to Plaintiff.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 149 of the Complaint.

**COMPLAINT ¶150:**

As a proximate result of the conduct of the Defendant, Yero, Inc. as described and set forth herein Plaintiff was damaged in an amount in excess of the jurisdictional limits of this Court believed to exceed $750,000.00, the exact amount of which will be proven at the time of trial.  When Plaintiff has ascertained the full amount of his damages, he will seek leave of Court to amend this Complaint accordingly.

**ANSWER:**

Allstate admits that Plaintiff has alleged damages in excess of $75,000 in this case, and

that such damages give rise to diversity jurisdiction in this Court pursuant to 28 U.S.C. § 1332.

Nonetheless, Allstate denies it has caused any damage to Plaintiff. To the extent Paragraph 150

of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶151:**

Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 151 of the Complaint, and therefore they are denied.

**COMPLAINT ¶152:**

Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable and governing provisions of Florida Law.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 152 of the Complaint.

**COMPLAINT ¶153:**

Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**ANSWER:**

Paragraph 153 of the Complaint does not contain any allegations against Allstate to

which a response is required. To the extent Paragraph 153 does contain factual allegations

against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of

punitive damages pursuant to §762.72 Florida Statutes.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs' Complaint fails to state a claim in law or in fact that can be granted, and

therefore the Complaint should be dismissed with prejudice.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

**THIRD DEFENSE**

Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing against Allstate fail as a matter of law because Allstate lawfully terminated the EA Agreements due to Plaintiff's prior breach.

WHEREFORE, Defendant Allstate Insurance Corporation seeks entry of judgment against Plaintiff with respect to all counts contained in the Complaint, as well as for any other relief this Court deems just and proper.

Dated: September 6, 2018                    Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Salomon Laguerre*
Salomon Laguerre
Florida Bar No. 092470
slguerre@seyfarth.com
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Defendant*
*Allstate Insurance Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ALLWYN JOURDAN,

        Plaintiff,

        v.

ALLSTATE INSURANCE COMPANY, a
Foreign Illinois Registered Corporation, and
CONRADO YERO, INC., a Florida For
Profit Corporation,

        Defendants.

Case No. 1:18-cv-23561-KMM

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2018, I electronically filed the foregoing

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER AND DEFENSES TO

COMPLAINT and that it is available for viewing and downloading from the Court's CM/ECF

system, and that the participants in this case that are registered CM/ECF users will be served

electronically by the CM/ECF system. I further certify that copies of the foregoing document

were served via e-mail and U.S. Mail to the attorney of record for Plaintiff Allwyn Jordan at the

following address:

        Tina El Fadel
        eservice@ks-law.com
        K/S Attorneys at Law
        4800 N. Federal Highway
        Suite 103-B
        Boca Raton, Florida 33431

and via email and U.S. Mail to the attorneys of record for Defendant Conrado Yero, Inc. at the
following address:

        Blake S. Sando
        blake.sando@csklegal.com
        Maria D. Vera

maria.vera@csklegal.com
Cole, Scott & Kissane, P.A.
Cole, Scott & Kissane Building
9150 S. Dadeland Blvd., Suite 1400
P.O. Box 569015
Miami, Florida 33256


*/s/ Salomon Laguerre*
Salomon Laguerre

*Counsel for Defendant*
*Allstate Insurance Company*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| ALLWYN JOURDAN,<br><br>       Plaintiff,<br><br>   v.<br><br>ALLSTATE INSURANCE COMPANY, a<br>Foreign Illinois Registered Corporation, and<br>CONRADO YERO, INC., a Florida for Profit<br>Corporation,<br><br>      Defendants. | Case No. 1:18-cv-23561-KMM |

### DEFENDANT ALLSTATE INSURANCE COMPANY'S
### ANSWER AND DEFENSES TO COMPLAINT

Defendant Allstate Insurance Company ("Allstate"), by and through the undersigned

counsel, hereby submits its Answer and Defenses to the Complaint filed by Plaintiff Allwyn

Jourdan ("Plaintiff"), showing the Court as follows:

### PARTIES VENUE AND JURISDICTION

**COMPLAINT ¶1:**

Plaintiff is an individual, over the age of eighteen (18), and at all times material to this
action resides in Miami-Dade County, State of Florida.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 1 of the Complaint, and therefore they are denied.

**COMPLAINT ¶2:**

Defendant, ALLSTATE, is a duly organized and registered State of Illinois Corporation,
registered to do business in all 50 States of the United States of America and thus is registered to
do business in the State of Florida as a foreign corporation with a principal address of 2775
Sanders Road, Northbrook, Illinois 60062, a mailing address of 3075 Sanders Road, H1E,
Northbrook, Illinois 60062 and maintains offices for the conduct of its business in the State of
Florida and specifically in Miami-Dade County, Florida.

49055003v.1

**ANSWER:**

Allstate admits that it is an Illinois corporation, that it is registered to do business in the State of Florida, that it has a principal address of 2775 Sanders Road, Northbrook, Illinois 60062 and a mailing address of 3075 Sanders Road, H1E, Northbrook, Illinois 60062. Allstate further admits that it maintains offices for the conduct of its business in Miami-Dade County, Florida. The remainder of the allegations contained in Paragraph 2 of the Complaint are denied.

**COMPLAINT ¶3:**

Allstate maintains a Registered Agent Name and Address in the State of Florida of: CHIEF FINANCIAL OFFICER as P.O. Box 6200 (32314-6200) and 200 E. Gaines Street, Tallahassee, Florida 32399-0000.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 3 of the Complaint.

**COMPLAINT ¶4:**

Allstate, as a foreign corporation doing business in the State of Florida has offices, agents or other representatives in Miami-Dade County, Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 4 of the Complaint.

**COMPLAINT ¶5:**

The Court also has jurisdiction over Allstate pursuant to Florida Statute §§48.193(1)(a)(1),(4) and (7) and/or by voluntary submission.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 5 of the Complaint.

**COMPLAINT ¶6:**

Defendant, Yero, Inc., is a duly organized and registered State of Florida Corporation registered to do business in the State of Florida, with the Department of State, Division of Corporations.  Defendant, Yero, Inc. maintains a principal address of 10030 S.W. 40th Street, #A, Miami, Miami-Dade County, Florida 33165.  The Defendant, Yero, Inc. has as its Registered Agent Conrado Yero with a registered agent address of 10030 S.W. 40th Street, #A, Miami, Miami-Dade County, Florida 33165.

2

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 6 of the Complaint, and therefore they are denied.

**COMPLAINT ¶7:**

This is an action for damages which exceeds the minimum jurisdictional limits of the Court, exclusive of interest, costs and attorney's fees.

**ANSWER:**

Allstate admits that Plaintiff has alleged damages exceeding $75,000, exclusive of interest and costs. Allstate further admits that Plaintiff's alleged damages meet the threshold for diversity jurisdiction in this Court pursuant to 28 U.S.C. § 1332. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 7 of the Complaint, they are denied.

**COMPLAINT ¶8:**

Venue is proper in MIAMI-DADE County because it is the location in which the parties to this action transacted there business dealings with one another and Allstate and Yero, Inc. maintain offices in MIAMI-DADE County for the conduct of their respective businesses in the State of Florida.

**ANSWER:**

Allstate admits that Allstate products are sold in Miami-Dade County, and further admits that at one time, Plaintiff was authorized to sell Allstate products to Allstate customers in Miami-Dade County. Allstate further admits that venue is proper in this Court, the U.S. District Court for the Southern District of Florida, Miami Division. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 8 of the Complaint, and therefore they are denied.

## STATEMENT OF THE FACTS

### COMPLAINT ¶9:

In or around the mid to late 1990's forward Allstate converted, in the State of Florida, it's employee licensed insurance agent business model and/or business structure of employee agents to that of exclusive agents as independent contractors utilizing what is known as the R3001 Exclusive Agency Agreement.  Since the inception of the Exclusive Agency business plan and model by Allstate there have been several iterations of the R3001 Exclusive Agency Agreement with different designations such as R3001, R3001A, R3001C and R3001S.

### ANSWER:

Allstate admits that it hires independent contractors to operate as Allstate Exclusive Agents. Allstate further admits that its business relationship with its Allstate Exclusive Agents is governed by the R3001 Exclusive Agency Agreement, which has existed in different forms over the years, including but not limited to the R3001S Exclusive Agency Agreement. Allstate admits that, at all times relevant to the issues raised in Plaintiff's Complaint, Allstate's business relationship with Plaintiff was governed by an R3001S Exclusive Agency Agreement (hereinafter the "EA Agreement"). Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 9 of the Complaint, and therefore they are denied.

### COMPLAINT ¶10:

At all times material hereto the R3001 Exclusive Agency Agreement, and it's various iterations, incorporates within its terms a Supplemental Agreement and a Independent Contractors Manual, as were amended from time to time, at the discretion of Allstate and the terms thereof applied to each iteration and/or type of Exclusive Agency Agreement used since the mid to late 1990's forward by Allstate as part of its exclusive agency/independent contractor business plan and model as adopted and changed and readopted over the course of time.

### ANSWER:

Allstate admits that a Supplement for the R3001 Agreement and an Exclusive Agency Independent Contractor Manual were expressly incorporated into the terms of the EA Agreement governing Allstate's relationship with Plaintiff at all times material to the issues raised in

Plaintiff's Complaint. The terms of those documents, collectively comprising the EA Agreement,

speak for themselves. Allstate is without knowledge or information sufficient to admit or deny

the remaining allegations contained in Paragraph 10 of the Complaint, and therefore they are

denied.

**COMPLAINT ¶11:**

     Allstate as of the time of the filing of these actions markets its Exclusive Agency
Program with slogans such as:

    a.       "Good Builds a Life"*[1]

    b.       "It's good to be your own boss"*;

    c.       "Drive and discipline are good for business"*;

    d.       "It's a good balance"*;

    e.       "Earn a good living"*;

    f.       "Live a good life"*;

    g.       "A marketing powerhouse to help grow your business"*;

    h.       "A brand that has your back"**[2];

    i.       "Do you have what it takes?"*;

    j       "How much money will I make?"*;

    k.       "The sky's the limit"**;

    m.       "Build a legacy"**; and

    n.       "As an Agency Owner, you own an economic interest in your business[.] This
gives you the freedom to sell to a qualified buyer or Allstate, or pass it on to your children or
another family member."* *

---

[1] (*)  Above quotes are subject to the stated limitation of:  "Subject to all terms and conditions as outlined in the Allstate R3001 Exclusive Agency Agreement and Exclusive Agency program materials. Allstate agents are not franchisees; rather they are exclusive agent independent contractors and are not employed by Allstate. Allstate is an Equal Opportunity Company. Allstate Insurance Company, Northbrook, IL. In New Jersey, Allstate Insurance Company, Bridgewater, NJ. ©2016 Allstate".

[2] (**) Above quotes are subject to the stated limitation of:  "Subject to the terms of Allstate Agency Agreement".

All of the foregoing quotes and limitations thereon are attached hereto and made apart hereof and marked as Plaintiff's Composite Exhibit "A".

**ANSWER:**

Allstate admits that in Paragraph 11, Plaintiff lists various slogans that he alleges are printed on the documents attached as Plaintiff's Composite Exhibit A. Allstate states that the terms of such documents speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 11 of the Complaint, they are denied.

**COMPLAINT ¶12:**

Allstate in its Exclusive Agency Independent Contractor's marketing materials states to prospective new Exclusive Independent Contractor Agents that the process to become an Allstate Exclusive Agent Independent Contractor "takes about three to nine months from initial interest to opening your agency's doors." See Plaintiffs Composite Exhibit "A".

**ANSWER:**

Allstate admits that Plaintiff's Composite Exhibit A appears to contain true and correct copies of certain Allstate marketing materials. The terms of these written documents speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 12 of the Complaint, they are denied.

**COMPLAINT ¶13:**

At all times material hereto Plaintiff is an individual registered with and licensed by the Florida Department of Financial Services, State of Florida to sell or offer to sell insurance and insurance related products and financial investment products.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 13 of the Complaint, and therefore they are denied.

**COMPLAINT ¶14:**

In mid to late 2012, Plaintiff became interested in becoming an Allstate Insurance agent and viewed various company marketing materials of Allstate of its Exclusive Agency Program ending with Plaintiff and Defendant entering into an R3001S Exclusive Agency Agreement dated August 1, 2013 and incorporating therein the terms of the Supplement for the R3001

6

Agreement dated February 1, 2013, the Exclusive Agency Independent Contractor Reference Guide dated February 25, 2013, the Independent Contractor Manual Revision Notice dated October 18, 2012, the Allstate Agency Standards Revision Notice dated October 8, 2012 and the Schedule of Commissions for the Allstate Financial Services, LLC Registered Representative Agreement (hereinafter referred to as the "Contract" or "R3001 Agreement").  All of the foregoing referenced documents are attached hereto and made apart hereof as Plaintiff's Composite Exhibit "B".[3]

## ANSWER:

Allstate admits that it entered into an R3001S Exclusive Agency Agreement with Plaintiff, effective August 1, 2013, which Allstate refers to herein as the EA Agreement (*see* Answer to Complaint ¶ 9, *supra*), and further admits that the terms outlined in the versions of Allstate's Supplement for the R3001 Agreement, Exclusive Agency Independent Contractor Manual and Agency Standards, including all relevant revisions, that were effective as of August 1, 2013 were expressly incorporated into the EA Agreement. Allstate further admits that it appears Plaintiff has attached true and correct copies of the foregoing documents as part of Plaintiff's Composite Exhibit B, and states that the terms of those documents speak for themselves. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 14 of the Complaint, and therefore they are denied.

## COMPLAINT ¶15:

Between mid to late 2012 to August 2013, Plaintiff made application to become an Allstate Exclusive Agent, Independent Contract and as required by Allstate expended money upon, without limitation,

- reserve financial bank deposits,

- attended Allstate University in the State of Illinois,

---

[3] Plaintiff has included a copy of the Allstate Financial Services, LLC schedule of Commissions as part of the Contract and Plaintiffs Composite Exhibit "B" as said document relates to the Plaintiff tenure as an Exclusive Agent with Allstate and is a part of the Allstate Exclusive Agency program but as of the time of the filing of this Complaint Plaintiff is without sufficient knowledge to name Allstate Financial Services, LLC as a named defendant herein and reserves to amend to add said company as an additional defendant pending discovery to be conducted over the course of this litigation yielding information warranting the additional party hereto.

7

- leased a business premises,

- established a business plan for an insurance agency selling exclusively the Allstate insurance and investment products,

- leases commercial business space, arranges for and expends money to establish utilities services for the leasehold obtained,

- engaged in the expenditure of money to market Allstate insurance and investment products and prepared to and hire employees to handle office and sales operations of an insurance agency.

**ANSWER:**

Allstate admits that Plaintiff took steps to become an Allstate Exclusive Agent and that he became an Allstate Exclusive Agent pursuant to the terms of the EA Agreement, which speak for themselves, effective August 1, 2013. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 15 of the Complaint, and therefore they are denied.

**COMPLAINT ¶16:**

Plaintiff commenced business as an Allstate Exclusive Agent on or about August 1, 2013 as a "Start Up" agent.

**ANSWER:**

Allstate admits that Plaintiff was an authorized Allstate Exclusive Agent pursuant to the terms of the EA Agreement, which speak for themselves, as of August 1, 2013. Allstate further admits that Plaintiff operated under the EA Agreement as an independent contractor tasked with building his own book of business as an Allstate Exclusive Agent. Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 18 of the Complaint, and therefore they are denied.

**COMPLAINT ¶17:**

A "Start Up" agent is an Allstate Exclusive Agent who starts his or her own insurance agency as an exclusive agent selling only Allstate insurance products as an independent

8

contractor without any policies or business earnings, commissions, or payments (hereinafter "Allstate Product"), at the time of commencing operation of an insurance agency and must go out and sell and/or produce Allstate Product new business or recaptured eligible prior Allstate Product pursuant to the terms and conditions of the R3001 Agreement and the Company.

**ANSWER:**

Allstate admits that Plaintiff has alleged his understanding of the definition of the term "Start Up agent" in Paragraph 17 of the Complaint. Allstate further admits that the terms of Plaintiff's engagement with Allstate as an Allstate Exclusive Agent were set forth in the EA Agreement, which is a written document, the terms of which speak for itself. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 17, they are denied.

**COMPLAINT ¶18:**

Between August 1, 2013 and October 14, 2015, Plaintiff operated an Allstate Exclusive Agency as an independent contractor insurance agency selling Allstate Product, building an economic interest in the Book of Business (hereinafter "Book of Business", "BOB" or "customers") in the State of Florida pursuant to the R3001 Agreement.

**ANSWER:**

Allstate admits that Plaintiff was authorized to operate as an Allstate Exclusive Agent in the capacity of an independent contractor pursuant to the terms of the EA Agreement between August 1, 2013 and October 14, 2015. Allstate further admits that Plaintiff sold Allstate products in the State of Florida pursuant to the EA Agreement, the terms of which speak for itself, between August 1, 2013 and October 14, 2015. Finally, Allstate admits that Plaintiff began building a book of business in which he retained some economic interest pursuant to the terms of the EA Agreement. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 18 of the Complaint, they are denied.

**COMPLAINT ¶19:**

In and between June, 2015 and February, 2016, Mr. Mike Sheely was associated with the Defendant, Allstate as a Field Senior Vice President in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 19 of the Complaint.

**COMPLAINT ¶20:**

In and between June, 2015 and February, 2016, Mr. Mark Canfield was associated with the Defendant, Allstate as a Territorial Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 20 of the Complaint.

**COMPLAINT ¶21:**

In and between June, 2015 and February, 2016, Janice Brown-Francois was associated with the Defendant, Allstate as a Field Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 21 of the Complaint.

**COMPLAINT ¶22:**

In and between June 2015 and February, 2016, Marcelo Beruvides was associated with the Defendant, Allstate as a Filed [sic] Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits that Marcelo Beruvides worked as a Field Sales Leader for Allstate within

the state of Florida between June 2015 and February 2016. To the extent Paragraph 22 asserts

any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶23:**

In and between June, 2015 and February, 2016, Lindsay Rivera was part of the Human Resource Officer Department for the Defendant, Allstate in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 23 of the Complaint.

**COMPLAINT ¶24:**

In and between June, 2015 and February, 2016, Laine Sutkay was part of the in house legal department for the Defendant, Allstate in the State of Florida and/or the State of Illinois.

49055003v.1

**ANSWER:**

Allstate admits that between June 2015 and February 2016, Laine Sutkay (hereinafter "Ms. Sutkay") was an Associate Investigator for the Investigative Services Division of Allstate's Law & Regulation Department and worked out of Allstate's corporate headquarters in Northbrook, Illinois. To the extent Paragraph 24 asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶25:**

In and between June, 2015 and February, 2016, Helen Sylvester was associated with the Defendant, Allstate as a Territory Sales Leader in the State of Florida.

**ANSWER:**

Allstate admits the allegations contained in Paragraph 25 of the Complaint.

**COMPLAINT ¶26:**

On or about July 29, 2015, Lindsay Rivera contacted the Plaintiff to advise him that Laine Sutkay wanted to meet with Plaintiff at the Allstate office in Doral, Miami-Dade County, Florida on July 30, 2015 and that he was to bring certain files of customers of the BOB generated by his agency with him to the meeting.

**ANSWER:**

Allstate admits that a meeting was scheduled for July 30, 2015 between Plaintiff and Ms. Sutkay. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 26 of the Complaint, and therefore they are denied.

**COMPLAINT ¶27:**

On or about July 30, 2015, Plaintiff appeared at the Defendant, Allstate's Doral, Miami-Dade County, Florida office for the scheduled meeting with Ms. Sutkay and was surprised that he was not there for a meeting as represented by Ms. Rivera, but for a Spanish Inquisition Socratic styled videotaped investigation conducted by Ms. Sutkay concerning discounts given to certain customers of the BOB.  The videotaped inquisition ended with Ms. Sutkay requesting additional customer files, which were provided via electronic mail by Plaintiff to Ms. Sutkay on July 30, 2015.

**ANSWER:**

Allstate admits that Plaintiff appeared at an Allstate office located in Miami-Dade County

on July 30, 2015 for a meeting with Ms. Sutkay. Allstate admits that Ms. Sutkay interviewed

Plaintiff during the July 30, 2015 meeting remotely from her office in Northbrook, Illinois, and

that Ms. Sutkay recorded said interview. Allstate denies the remaining allegations contained in

Paragraph 27 of the Complaint.

**COMPLAINT ¶28:**

Ms. Sutkay, also on July 30, 2015 independently conducted an inquest using videotape of
Plaintiff's employees known as Leesday Sanmartin and Sabrina Contreras about customer files
generated by Plaintiff's agency.

**ANSWER:**

Allstate admits that Ms. Sutkay also interviewed Leesday San Martin and Sabrina

Contreras, who were at one time employed by Plaintiff in his capacity as an Allstate Exclusive

Agent, on July 30, 2015. Allstate denies the remaining allegations contained in Paragraph 28 of

the Complaint.

**COMPLAINT ¶29:**

Prior to the July 30, 2015 videotaped inquisition styled interviews of Ms. Sutkay, Janice
Brown for Defendant, Allstate assured Plaintiff that the interviews to be conducted by Ms.
Sutkay were routine and the chances of closing Plaintiffs office by the Defendant, Allstate were
non-existent in response to Plaintiff's inquiry concerning the same and the past industry known
practices of Allstate of shutting agents down and affording little to no time to obtain a buyer for
the contractually provided economic interest of the exclusive agent in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 29 of the Complaint.

**COMPLAINT ¶30:**

Janice Brown, after the July 30, 2015 videotaped inquisition conducted by Ms. Sutkay for
Defendant, Allstate, again represented to Plaintiff and assured Plaintiff that the inquisition
conducted with Plaintiff, Leeday Sanmartin and Sabrina Contreras by Ms. Sutkay would not
result in the closing of his exclusive agency with Allstate.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 30 of the Complaint.

**COMPLAINT ¶31:**

Based upon the representations and assurances of Ms. Brown to Plaintiff, Plaintiff did not undertake to seek a buyer of his economic interest in his exclusive agency's "Book of Business" in July, August or September 2015.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 31 of the Complaint, and therefore they are denied.

**COMPLAINT ¶32:**

On or about October 14, 2015, Plaintiff was scheduled to meet with Mark Canfield and Janice Brown at the Defendant, Allstate's Regional Office in Doral, Florida.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 32 of the Complaint, and therefore they are denied..

**COMPLAINT ¶33:**

Plaintiff met with Mark Canfield and Janice Brown at the Defendant, Allstate Regional Office in Doral, Miami-Dade County, Florida on October 14, 2015.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 33 of the Complaint, and therefore they are denied.

**COMPLAINT ¶34:**

On October 14, 2015 Plaintiff was handed a letter dated October 14, 2015 and signed by Mr. Canfield notifying Plaintiff of his termination as an Allstate Exclusive Agent, Independent Contractor and termination of the Allstate's R3001S Agreement effective immediately.  A copy of the letter of termination is attached hereto and marked Exhibit "C".

**ANSWER:**

Allstate admits that a true and correct copy of its October 14, 2015 termination letter to

Plaintiff appears to be attached as Exhibit C to Plaintiff's Complaint. The terms of that letter

speak for themselves. To the extent there are any additional factual allegations asserted against

Allstate in Paragraph 34 of the Complaint, they are denied.

**COMPLAINT ¶35:**

The October 14, 2015, termination letter, (See Exhibit "C"), notified Plaintiff that his R3001 Agreement was terminated by Allstate for cause.  Plaintiff disputed his agency's termination for cause by Allstate, as it was merely a guise to eliminate his agency's right to receive renewal commissions and receive payment for his economic interest in the BOB.

**ANSWER:**

Allstate states that the terms of the October 14, 2015 letter speak for themselves. Allstate

denies all further allegations contained in Paragraph 35 of the Complaint.

**COMPLAINT ¶36:**

On or about October 14, 2015, Defendant, Allstate sent its agents to retrieve all of Allstate property, files, computers and ended Plaintiff's access to the customers in the Book of Business effective date same.

**ANSWER:**

Allstate admits that it terminated the EA Agreement for cause effective October 14, 2015

and exercised its rights under the EA Agreement to take over service of Plaintiff's book of

business. The terms of the EA Agreement speak for themselves. To the extent Paragraph 36

asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶37:**

The R3001 Agreement entered into by Plaintiff and Defendant provides that Plaintiff, as an Exclusive Agent, Independent Contract, is to have an economic interest in the Book of Business generated by him and his agency as a start-up and provides as to how the value of the termination payment is to be calculated regardless of how the R3001 Agreement is terminated, meaning for cause or without cause should the Exclusive Agent elect to receive a termination payment for such interest rather than sale the economic interest to a third party or another Exclusive Agent, if permitted by Allstate.

**ANSWER:**

To the extent the allegations in Paragraph 37 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 37 of the Complaint, they are

denied.

**COMPLAINT ¶38:**

The R3001 Agreement provides that without regard as to the reason of termination
Plaintiff was to have either termination payment or to exercise the right to sell Plaintiff's
economic interest in the BOB.

**ANSWER:**

To the extent the allegations in Paragraph 38 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 38 of the Complaint, they are

denied.

**COMPLAINT ¶39:**

Nowhere in the R3001 Agreement are the terms of Florida Statute §626.754 mentioned,
referenced or addressed.

**ANSWER:**

To the extent the allegations in Paragraph 39 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 39 of the Complaint, they are

denied.

**COMPLAINT ¶40:**

Nowhere in the R3001 Agreement is Plaintiff or Defendant, Allstate referred to or
addressed as a "direct writing insurers" as address in Florida Statute §626.754(2).

**ANSWER:**

To the extent the allegations in Paragraph 40 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 40 of the Complaint, they are

denied.

**COMPLAINT ¶41:**

Nowhere in the R3001 Agreement is Plaintiff or Defendant, Allstate referred to or
addressed as "agents and insurers between whom the relationship of employer and employee
exists" as address in Florida Statute §626.754(2).

**ANSWER:**

To the extent the allegations in Paragraph 41 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 41 of the Complaint, they are

denied.

**COMPLAINT ¶42:**

Pursuant to the terms of the R3001 Agreement Plaintiff at all times material hereto was
an exclusive agent, independent contractor of Allstate.

**ANSWER:**

Allstate admits that Plaintiff was an authorized Allstate Exclusive Agent subject to the

terms of the EA Agreement between August 1, 2013 and October 14, 2015, and that during this

time period, Plaintiff was an independent contractor for Allstate. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 42 of the Complaint, they are

denied.

**COMPLAINT ¶43:**

Pursuant to the terms of the R3001 Agreement Plaintiff at all times material hereto was
not an agent of a direct writing insurer.

49055003v.1

**ANSWER:**

To the extent the allegations in Paragraph 43 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 43 of the Complaint, they are denied.

**COMPLAINT ¶44:**

Pursuant to the terms of the R3001 Agreement Plaintiff at all time material hereto was not an agent with Defendant, Allstate with whom an employer/employee relationship existed.

**ANSWER:**

To the extent the allegations in Paragraph 44 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 44 of the Complaint, they are denied.

**COMPLAINT ¶45:**

The language of Florida Statute §626.754(1) at all times material hereto applied to Plaintiff and Defendant, Allstate.

**ANSWER:**

Paragraph 45 of the Complaint contains a legal conclusion to which no response is required. To the extent Paragraph 45 asserts any factual allegations against Allstate, they are denied.

**COMPLAINT ¶46:**

Pursuant to the terms of the R3001 Agreement, after October 14, 2015, Defendant, Allstate prevented Plaintiff from being able to contract or service Allstate Product customers to preserve the level of sold products and secure renewals of the Book of Business.

**ANSWER:**

To the extent the allegations in Paragraph 46 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. Allstate admits that it terminated the EA Agreement effective October 14, 2015 and exercised its rights thereunder. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 43 of the Complaint, they are denied.

**COMPLAINT ¶47:**

Pursuant to the terms of the R3001 Agreement, after October 14, 2015, Defendant, Allstate prevented Plaintiff from being able to contract or service Allstate Product customer to preserve the value and level of his economic interest in the BOB for sale to an approved outside party.

**ANSWER:**

To the extent the allegations in Paragraph 47 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. Allstate admits that it terminated the EA Agreement effective October 14, 2015 and exercised its rights thereunder. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 47 of the Complaint, they are denied.

**COMPLAINT ¶48:**

Pursuant to the terms of the R3001 Agreement, Allstate barred and prohibited Plaintiff from any contact with customer in the BOB on October 14, 2015 and at all times thereafter.

**ANSWER:**

To the extent the allegations in Paragraph 48 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. Allstate admits that it terminated the EA Agreement effective October 14, 2015 and exercised its rights thereunder. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 48 of the Complaint, they are denied.

49055003v.1

**COMPLAINT ¶49:**

The language and specific protections afforded to Plaintiff by Florida Statute §626.754(1) were not acknowledged, provided or followed by the Defendant, Allstate after October 14, 2015.

**ANSWER:**

Paragraph 49 of the Complaint contains a legal conclusion to which no response is

required. To the extent Paragraph 49 asserts any factual allegations against Allstate, they are

denied.

**COMPLAINT ¶50:**

At the time of the October 14, 2015 meeting with Mr. Canfield and Ms. Brown at the Allstate office in Doral, Miami-Dade County, Florida, Plaintiff was informed by Mr. Canfield that Plaintiff was to receive renewal business of the Book of Business for the ensuing 90 days and that Plaintiff was to be afforded 90 days within which to sell his economic interest in the BOB or, if eligible, receive a termination payment at Plaintiff's election.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 50 of the Complaint.

**COMPLAINT ¶51:**

As of the date of the filing of this Complaint Allstate has failed and thus refused to pay to Plaintiff any earned commissions, credited any renewal business to the BOB accruing during the 90 days as he was advised by Allstate's Mark Canfield on October 14, 2015.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 51 of the Complaint.

**COMPLAINT ¶52:**

The R3001 Agreement is silent as to the origin of the 90 day period Plaintiff was afforded by the Defendant, Allstate through its agent Mr. Canfield to sell his economic interest in the BOB.

**ANSWER:**

To the extent the allegations in Paragraph 52 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

49055003v.1

additional factual allegations asserted against Allstate in Paragraph 52 of the Complaint, they are

denied.

## COMPLAINT ¶53:

Prior iterations of the R3001 Agreement did contain a 90 day period for the sale of an exclusive agent's interest in the BOB post termination.

## ANSWER:

"Prior iterations of the R3001 Agreement" is vague and ambiguous, and thus Allstate is

without knowledge or information sufficient to admit or deny the allegations contained in

Paragraph 53 of the Complaint. The allegations are denied on that basis. Furthermore, the

allegations contained in Paragraph 53 rely upon interpretation of a written document, the terms

of which speak for themselves. To the extent Paragraph 53 of the Complaint asserts any

additional factual allegations against Allstate, they are denied.

## COMPLAINT ¶54:

At the time of the October 14, 2015 meeting with Mr. Canfield and Ms. Brown at the Allstate office in Doral, Florida, Plaintiff asked if he would be permitted by Allstate to sell his economic interest in the Book of Business to another Allstate Exclusive Agent, Independent Contractor and was told by Mr. Canfield for the Defendant, Allstate that Allstate would only consider "outside" buyers and denied Plaintiff's request to sell his economic interest in the Book of Business to another already existing Allstate Exclusive Agent, Independent Contractor.  There is no provision in the R3001 Agreement which restricts Plaintiff to only being able to sell his contractually bargained for right to sell his economic interest in the BOB to only "outside" buyers.

## ANSWER:

To the extent the allegations in Paragraph 54 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate denies the remaining

allegations contained in Paragraph 54 of the Complaint.

## COMPLAINT ¶55:

As of December 31, 2015, Plaintiff's annual generated Product premiums or the Book of Business yielded approximately $1,907,497.00 dollars in premium payment to Allstate annually.

49055003v.1

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 55 of the Complaint, and therefore they are denied.

**COMPLAINT ¶56:**

Between August 1, 2013 and December 31, 2015, the Book of Business generated by Plaintiff had an average renewal rate of 93% or better.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 56 of the Complaint, and therefore they are denied.

**COMPLAINT ¶57:**

In Start-Up costs for Allstate Exclusive Agency Plaintiff expended in excess of $550,000.00.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 57 of the Complaint, and therefore they are denied.

**COMPLAINT ¶58:**

Allstate, in the R3001 Agreement, reserves sole and exclusive discretion to approve or not the sale to a proposed buyer of the economic interest of the Exclusive Agency, Independent Contractor Book of Business should the agent, such as Plaintiff, make the election to sell same.

**ANSWER:**

To the extent the allegations in Paragraph 58 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 58 of the Complaint, they are

denied.

**COMPLAINT ¶59:**

Plaintiff elected to exercise his right to sell his economic interest in the BOB and between October 14, 2015 and January 31, 2016, Plaintiff presented three (3) "outside" buyers to Allstate

21

to purchase his economic interest in the Book of Business. All three (3) of Plaintiff's buyers were rejected or not approved by Allstate during the 90 day period.

**ANSWER:**

Allstate admits that Plaintiff proposed the names of three potential buyers for the economic interest in Plaintiff's book of business via email on January 22, 2016. Allstate further admits that it did not approve sale to any of those individuals pursuant to its rights under the EA Agreement. Allstate is without knowledge or information sufficient to admit or deny the remaining allegations contained in Paragraph 59 of the Complaint, and therefore they are denied.

**COMPLAINT ¶60:**

The R3001 Agreement is silent as to what is to come of Plaintiff's economic interest in the Book of Business in the event it is not sold to an Allstate approved "outside" buyer.

**ANSWER:**

To the extent the allegations in Paragraph 60 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 60 of the Complaint, they are denied.

**COMPLAINT ¶61:**

Allstate took over the servicing of customer and Allstate Products, including but not limited to the renewals thereof of the Book of Business from Plaintiff as of October 14, 2015.

**ANSWER:**

Allstate admits that it began servicing individuals previously serviced by Plaintiff upon termination of the EA Agreement on October 14, 2015. To the extent Paragraph 61 of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶62:**

Allstate barred and prohibited Plaintiff from any contact with customer in the BOB on October 14, 2015 and at all times thereafter.

**ANSWER:**

Allstate admits that it terminated the EA Agreement for cause as of October 14, 2015, and subsequently exercised its post-termination rights under the EA Agreement. Allstate denies the remaining allegations contained in Paragraph 62 of the Complaint.

**COMPLAINT ¶63:**

The R3001 Agreement provides that Allstate has ownership of the Allstate Product and the customer information in a BOB and that the Plaintiff has the right to sell his or her economic interest in a BOB to an Allstate approved buyer of such interest.

**ANSWER:**

To the extent the allegations in Paragraph 63 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 63 of the Complaint, they are denied.

**COMPLAINT ¶64:**

Ninety (90) days from October 14, 2015 is to January 12, 2016.

**ANSWER:**

Allstate admits that 90 calendar days from October 14, 2015 is January 12, 2016.

**COMPLAINT ¶65:**

The October 14, 2015 termination letter provided Plaintiff until February 1, 2016 to complete the sale of his economic interest in the BOB.

**ANSWER:**

To the extent the allegations contained in Paragraph 65 purport to interpret the terms set forth in Allstate's October 14, 2015 termination letter, the letter is a written document, the terms of which can speak for themselves. To the extent Paragraph 65 of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶66:**

The terms of the R3001 Agreement entered into by the Plaintiff and Allstate require the Plaintiff to be vested in order to be eligible to receive a termination payment.

**ANSWER:**

To the extent the allegations in Paragraph 66 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 66 of the Complaint, they are denied.

**COMPLAINT ¶67:**

Plaintiff's exclusive agency as a start-up was required under the R3001 Agreement to vest for five (5) years before being eligible for Plaintiff to be entitled to elect a termination payment from Allstate upon termination of the R3001 Agreement.

**ANSWER:**

To the extent the allegations in Paragraph 67 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 67 of the Complaint, they are denied.

**COMPLAINT ¶68:**

Plaintiffs exclusive agency as of October 14, 2015 was not vested for five (5) years.

**ANSWER:**

Allstate admits that Plaintiff had not operated as an Allstate Exclusive Agent for five years as of October 14, 2015. To the extent the allegations contained in Paragraph 68 purport to interpret the terms of the EA Agreement, Allstate states that those terms speak for themselves. To the extent there are any additional factual allegations asserted against Allstate in Paragraph 68 of the Complaint, they are denied.

**COMPLAINT ¶69:**

Pursuant to the terms of the R3001 Agreement, Plaintiff on October 14, 2015 or at any time thereafter was not entitled to elect to receive a termination payment from Allstate.  The only way for Plaintiff to be compensated for the business generated by his agency for his agency and Allstate was to sell Plaintiffs economic interest he contractually interest in the BOB to an "outside" buyer.

**ANSWER:**

To the extent the allegations in Paragraph 69 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 69 of the Complaint, they are

denied.

**COMPLAINT ¶70:**

On February 8, 2016, Plaintiff was notified by Helen Sylvester, Territory Sales Leader for Defendant, Allstate that Plaintiff's termination was effective January 31, 2016, that Plaintiff did not present an approved buyer for his economic interest in the BOB during the imposed 90 day period or elect to receive a termination payment same and that no extension to the 90 day period would be given to Plaintiff to find a buyer of his economic interest in the BOB.  A copy of Ms. Sylvester's February 8, 2016 email to Plaintiff is attached and marked Exhibit "D".

**ANSWER:**

Allstate admits that a true and correct copy of a February 8, 2016 email communication

from Helen Sylvester to Plaintiff appears to be attached to the Complaint as Exhibit D. The terms

of this written document speak for themselves. To the extent Paragraph 70 of the Complaint

asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶71:**

At all times material hereto Conrado, Yero was a State of Florida licensed insurance agent and is an Allstate Exclusive Agent, Independent Contractor.

**ANSWER:**

Allstate admits that the allegations contained in Paragraph 71 of the Complaint.

**COMPLAINT ¶72:**

At all times material hereto Conrado Yero is the principal of the Defendant, Yero, Inc.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 72 of the Complaint, and therefore they are denied.

**COMPLAINT ¶73:**

At all times material hereto Defendant, Yero, Inc. is not itself independently licensed to sell or offer for sale insurance or financial investment products, including the Defendant, Allstate's Products by the State of Florida in the State of Florida.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 73 of the Complaint, and therefore they are denied.

**COMPLAINT ¶74:**

On January 25, 2016, Conrado Yero signed a letter as an "Allstate Exclusive Agent" for himself as a licensed agent and for and on behalf of Defendant, Yero, Inc., addressed to Dario Rios directly soliciting Dario Rios away from the BOB generated by Plaintiff of the Defendant, Allstate's Products.  A copy of the January 25, 2016 letter is attached and marked Exhibit "E".

**ANSWER:**

Allstate admits that Conrado Yero, on behalf of Conrado Yero, Inc. and in his capacity as

an Allstate Exclusive Agent, sent a letter to Allstate customer Dario Rios on or about January 25,

2016, and further admits that it appears a true and correct copy of this letter is attached to the

Complaint as Exhibit E. To the extent the allegations in Paragraph 74 of the Complaint purport

to interpret or characterize the contents of that letter, Allstate states that the terms of the

document speak for itself. Allstate denies all remaining allegations contained in Paragraph 74 of

the Complaint.

**COMPLAINT ¶75:**

On January 25, 2016, Dario Rios was a customer of Allstate and a part of the economic interest of the BOB in which Plaintiff was marketing for sale during the period provided by Allstate post October 14, 2015.

**ANSWER:**

Allstate admits that an individual named Dario Rios was an Allstate customer on or about January 25, 2016. Allstate denies all remaining allegations contained in Paragraph 75 of the Complaint.

**COMPLAINT ¶76:**

On January 25, 2016, Defendant, Allstate knew Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest therein.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 76 of the Complaint.

**COMPLAINT ¶77:**

On January 25, 2016, Defendant, Yero, Inc., knew Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest therein.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 77 of the Complaint, and therefore they are denied.

**COMPLAINT ¶78:**

On January 25, 2016, Defendant, Allstate knew that Plaintiff was not vested for five (5) years and not entitled to elect to receive a termination payment.

**ANSWER:**

Allstate admits that on or about January 25, 2016, Allstate knew that Plaintiff had not been operating as an Allstate Exclusive Agent for a period of five years. To the extent Paragraph 78 asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶79:**

On January 25, 2016, Defendant, Allstate knew that it had prohibited Plaintiff from selling his economic interest in the BOB to other existing Allstate exclusive agents.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 79 of the Complaint.

**COMPLAINT ¶80:**

On October 14, 2016, Defendant, Allstate knew that it could take an outside buyer three (3) to nine (9) months to be approved, train, set-up and open an Exclusive Agency, Independent Contractor business selling or offering for sale Allstate Products to consumers.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

On January 25, 2016, Defendant, Allstate knew that it had the contractual right to approve or disapprove buyers procured by Plaintiff and that it had already disapproved two (2) of Plaintiffs three (3) proposed buyers of his economic interest in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 81 of the Complaint.

**COMPLAINT ¶82:**

On or before January 25, 2016, Defendant, Allstate made Conrado Yero for Defendant, Yero, Inc., aware of the customers or some of the customers in the BOB generated by Plaintiff as a start-up exclusive agent, independent contractor.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 82 of the Complaint.

**COMPLAINT ¶83:**

On or before January 25, 2016, Defendant, Allstate disclosed the name, address, policy information of Dario Rios to Conrado Yero and thus the Defendant, Yero, Inc.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 83 of the Complaint.

**COMPLAINT ¶84:**

On January 25, 2016, Conrado Yero and thus Defendant, Yero, Inc., knew it was directly soliciting customers of the BOB in which Plaintiff was trying to sell his economic interest in to outside buyers.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 84 of the Complaint, and therefore they are denied.

**COMPLAINT ¶85:**

At no time material hereto were Conrado Yero or Yero, Inc., an "outside" buyer.

**ANSWER:**

Allstate admits that Defendant Conrado Yero, Inc. was licensed to sell Allstate products

during the period of time material to the issues raised in the Complaint. To the extent Paragraph

85 of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶86:**

At no time material hereto, did Plaintiff ever contact or discuss the sale of his economic interest in the BOB with or to Conrado Yero or the Defendant, Yero, Inc., with the Defendant, Allstate, Conrado Yero and/or the Defendant, Yero, Inc.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 86 of the Complaint, and therefore they are denied.

**COMPLAINT ¶87:**

Conrado Yero and thus Defendant, Yero, Inc., has the same right to sell his/its economic interest in the BOB generated by him/it or receive, if eligible upon vesting, a termination payment should his/its R3001 Agreement be terminated.

**ANSWER:**

To the extent the allegations in Paragraph 87 purport to interpret the terms of an

agreement between Allstate and Yero, these allegations are vague and ambiguous, because they

do not refer to a specific contract. And, in any event, the terms of such a contract would speak

for themselves. Therefore, Allstate is without knowledge or information sufficient to admit or

deny the allegations contained in Paragraph 87 of the Complaint. They are denied on that basis.

**COMPLAINT ¶88:**

      The value of the BOB for the termination payment is dictated by the terms of the R3001 Agreement, one component of which is the amount of premiums earned and received by Allstate over a specific period of time from the BOB of an exclusive agent.

**ANSWER:**

      Allstate admits that it values economic interest in Allstate Exclusive Agents' books of

business using guidelines set forth in each respective Allstate Exclusive Agent's contract with

Allstate. The terms of such agreements speak for themselves. To the extent Paragraph 88 asserts

any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶89:**

      Defendant, Yero, Inc., within the 90 day period Plaintiff was allotted to sell his economic interest in the BOB, directly solicit the customers in the BOB in which Plaintiff had a contractual economic interest pursuant to the terms of the R3001 Agreement.

**ANSWER:**

      Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 89 of the Complaint, and therefore they are denied.

**COMPLAINT ¶90:**

      Defendant, Yero, Inc., knew of or was informed by the Defendant, Allstate of the termination of the Plaintiff as an Exclusive Allstate Agent and the termination of the Plaintiffs R3001 Agreement with the Defendant, Allstate.

**ANSWER:**

      Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 90 of the Complaint, and therefore they are denied.

**COMPLAINT ¶91:**

Defendant, Yero, Inc., directly solicited the customers in the BOB generated by Plaintiff in January 2016 knowing Plaintiff was attempting to sell his economic interest in the BOB.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 91 of the Complaint, and therefore they are denied.

**COMPLAINT ¶92:**

On October 14, 2015, Defendant, Allstate knew that it had contractually prevented the Plaintiff from being able to elect to receive a termination payment as Plaintiff was not vested.

**ANSWER:**

To the extent the allegations in Paragraph 92 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate denies the remaining

allegations contained in Paragraph 92 of the Complaint.

**COMPLAINT ¶93:**

On October 14, 2015, Defendant, Allstate knew that it could contractually prevent the Plaintiff from realizing the benefit of his bargain by the sale of his economic interest in the BOB as in the R3001 Agreement it had reserved unto itself the absolute right to approve or disapprove of any buyer of the economic interest of the Plaintiff in the BOB and at no time did Allstate offer to purchase the economic interest as represented in its solicitation materials.  See Exhibit "A" and Paragraph 11. n. above.

**ANSWER:**

To the extent the allegations in Paragraph 93 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. Allstate denies the remaining

allegations contained in Paragraph 93 of the Complaint.

**COMPLAINT ¶94:**

From October 14, 2015 to January 31, 2016, Defendant, Allstate rejected all three buyers Plaintiff presented for approval of Allstate to buy Plaintiffs economic interest in the BOB.

**ANSWER:**

Allstate admits that it rejected three proposed buyers presented by Plaintiff prior to

January 31, 2016. Allstate denies all remaining allegations contained in Paragraph 94 of the

Complaint.

**COMPLAINT ¶95:**

All three "outside" buyers of the economic interest of the Plaintiff in the BOB as submitted by Plaintiff for approval within the 90 day allotted period were capable of purchasing Plaintiffs economic interest and had made formal offers to Plaintiff.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 95 of the Complaint, and therefore they are denied.

**COMPLAINT ¶96:**

Defendant, Allstate refused to extend the time for Plaintiff to sell his economic interest after the 90 day allotted period acknowledging in said refusal that it had allowed others extensions of time but for reasons stated in the declination email of Ms. Sylvester for the Defendant, Allstate, Plaintiff was not to be afforded such courtesies as had been afforded to others.  See Exhibit D attached hereto.

**ANSWER:**

Allstate admits that it did not extend Plaintiff's deadline to sell his economic interest in

his Allstate book of business. All other allegations contained in Paragraph 96 of the Complaint

are denied.

**COMPLAINT ¶97:**

The terms of the R3001 Agreement affording the Defendant, Allstate the absolute right to approve or disapprove of the buyer to be procured by Plaintiff for the purchase of his economic interest in the BOB and in doing so gave Allstate substantial discretion to promote its own self-interest.

**ANSWER:**

To the extent the allegations in Paragraph 97 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

49055003v.1

additional factual allegations asserted against Allstate in Paragraph 97 of the Complaint, they are

denied.

## COMPLAINT ¶98:

The terms of the R3001 Agreement is silent with regard to the methodology or standards to be used by Allstate when exercising its right to approve or disapprove of the buyer to be procured by Plaintiff for the purchase of his economic interest in the BOB during the allotted 90 day time period.

## ANSWER:

To the extent the allegations in Paragraph 98 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 98 of the Complaint, they are

denied.

## COMPLAINT ¶99:

The terms of the R3001 Agreement is silent with regard to the methodology or standards to be used by Allstate when exercising its discretion of whether to allow Plaintiff an extension of the 90 day allotted period for the Plaintiff to procure and sell his economic interest in the BOB.

## ANSWER:

To the extent the allegations in Paragraph 99 purport to interpret the terms of the EA

Agreement, Allstate states that those terms speak for themselves. To the extent there are any

additional factual allegations asserted against Allstate in Paragraph 99 of the Complaint, they are

denied.

## COMPLAINT ¶100:

Plaintiff, at all times material hereto had a legitimate expectation that Allstate would not take an opportunistic advantage due to the reservation of the absolute right to approve or disapprove buyer(s) of his economic interest in the BOB.

## ANSWER:

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 100 of the Complaint, and therefore they are denied.

49055003v.1

**COMPLAINT ¶101:**

Plaintiff, at all times material hereto, had a legitimate expectation that Allstate would not take an opportunistic advantage when exercising its discretion to allow Plaintiff an extension of the 90 day allotted time period for the Plaintiff to sell his economic interest in the BOB.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 101 of the Complaint, and therefore they are denied.

**COMPLAINT ¶102:**

Insurance Industry commentators, watch-dogs, reporters and investment analysis have over the course of the most recent several years or since 2011 repeatedly discussed, disclosed and reported of Defendant, Allstate business practice of terminating smaller start-up Exclusive Allstate Agents and consolidating the Start-up's BOBS with other larger agencies for financial gain and benefit to itself.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 102 of the Complaint, and therefore they are denied.

**COMPLAINT ¶103:**

Defendant, Allstate at all times material hereto, by denying Plaintiff access to the customers in the BOB after October 14, 2015 denied Plaintiff of his rights provided to Plaintiff by Florida Statute §626.754.

**ANSWER:**

The allegations contained in Paragraph 103 of the Complaint constitute a legal conclusion

to which no response is required. To the extent Paragraph 103 of the Complaint asserts any

additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶104:**

All conditions precedent to the bringing of this action have been met or waived.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 104 of the Complaint.

49055003v.1

**COMPLAINT ¶105:**

Florida Statute §626.754 provides in pertinent part:

Rights of agent following termination of appointment.

(1)     Following the termination of his or her agency appointment as to an insurer, the agent may for the period herein provided continue to service, and receive from the insurer commissions or other compensation relative to, policies written by him or her for the insurer during the existence of the appointment.  The Agent may countersign all certificates or endorsements necessary to continue such policies to the expiration date thereof, including renewal certificates or endorsements necessary to continue such policies the expiration date thereof, including renewal option periods, and collect and remit premiums due thereon, but shall not otherwise, except with the consent of the insurer, change or modify the policy in any way nor increase the hazards insured against therein.

(2)     This section does not apply as to agents of direct writing insurers or to agents and insurers between whom the relationship of employer and employee exists.

**ANSWER:**

Allstate admits that Plaintiff cites to statutory language from the Florida Code in

Paragraph 105 of the Complaint, which speaks for itself. To the extent Paragraph 105 contains

any factual allegations against Allstate, they are denied.

**COUNT I**
**BREACH OF CONTRACT**

**COMPLAINT ¶106:**

Plaintiffs expressly realleges and reincorporates paragraphs 1, 2, 3, 4, 5, 7-69, 75, 77, 78, 79, 80, 81, 83, 84, 86, and 90-105 above as if fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing

allegations as if set forth herein in full.

**COMPLAINT ¶107:**

At all times material hereto the R3001 Agreement by and between the Plaintiff and the Defendant, Allstate was a valid contract binding upon the Plaintiff and the Defendant, Allstate.

49055003v.1

**ANSWER:**

Allstate admits the allegations contained in Paragraph 107 of the Complaint.

**COMPLAINT ¶108:**

Plaintiff and Defendant, Allstate contracted for the Plaintiff to be able to receive the benefit of an economic interest in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 108 of the Complaint.

**COMPLAINT ¶109:**

Plaintiff was permitted by Allstate to market his economic interest in the BOB to "outside" buyers and did market his economic interest to "outside" buyers as permitted by Allstate from October 14, 2015 to January 31, 2016.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 109 of the Complaint, and therefore they are denied.

**COMPLAINT ¶110:**

Plaintiff was prevented by the Defendant, Allstate from marketing and/or selling his economic interest in the BOB after January 31, 2016.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 110 of the Complaint.

**COMPLAINT ¶111:**

Defendant, Allstate breached the R3001 Agreement with Plaintiff by not permitting Plaintiff to market the sale and purchase of the economic interest without interferences of itself and other Allstate agents by direct solicitation of customers in the BOB during the 90 day period, by intentionally denying the purchase of the economic interest to other existing Allstate agents, by promoting its own self financial interest to the detriment of Plaintiff by requiring the buyer of the economic interest be an "outside" buyer, by failing to pay any commissions and accord renewal business to the BOB for the 90 day period as expressed to Plaintiff, at Plaintiff's October 14, 2015 with Defendant, Allstate's representatives and/or as provided by State law, and by such other actions which have been stated in other paragraphs of this Complaint as incorporated within the Count as stated in paragraph 105 above.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 111 of the Complaint.

**COMPLAINT ¶112:**

The R3001 Agreement provisions do not modify, contravene or waive the provisions of Florida Statute §625.754.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 112 of the Complaint.

**COMPLAINT ¶113:**

Defendant, Allstate's breaches of the R3001 Agreement and its failure to follow the provisions of Florida Statute §625.754 constitute material breaches of the R3001 Agreement.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 113 of the Complaint.

**COMPLAINT ¶114:**

Plaintiff has suffered damage as a result of Defendant, Allstate's material breaches of the R3001 Agreement.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 114 of the Complaint.

**COMPLAINT ¶115:**

Plaintiff has suffered damages as a result of Defendant, Allstate's material breach of the provision of Florida Statute §625.754.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 115 of the Complaint.

**COMPLAINT ¶116:**

Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

49055003v.1

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 116 of the Complaint, and therefore they are denied.

**COMPLAINT ¶117:**

Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable provisions of the R3001 Agreement and governing provisions of Florida Law.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 117 of the Complaint.

**COMPLAINT ¶118:**

Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**ANSWER:**

Paragraph 118 of the Complaint does not contain any allegations against Allstate to which a response is required. To the extent Paragraph 118 does contain factual allegations against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of punitive damages pursuant to §762.72 Florida Statutes.

**COUNT II:**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH**
**AND FAIR DEALING**

**COMPLAINT ¶119:**

Plaintiffs expressly realleges and reincorporates paragraphs 1-5, 7-69, 75, 77, 78, 79, 80, 81, 83, 84, 86, 90-105 above as if fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing allegations as if set forth herein in full.

38

**COMPLAINT ¶120:**

Plaintiff and Defendant, Allstate entered into a contract referred to herein as R3001 Agreement.

**ANSWER:**

Allstate admits it entered into the EA Agreement with Plaintiff, effective August 1, 2013,

and that such contract is a valid and enforceable contract. To the extent Paragraph 120 of the

Complaint asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶121:**

Plaintiff did all, or substantially all, of the significant things that the R3001 Agreement required of him to do or was excused by the Defendant, Allstate from having to do those things required of him to market and sell his economic interest in the BOB.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 121 of the Complaint.

**COMPLAINT ¶122:**

Defendant, Allstate's actions and/or omissions unfairly interfered with Plaintiff's receipt of the R3001 Agreement benefits, i.e. the sale of the economic interest in the BOB post termination of the R3001 Agreement by either party thereto with or without cause.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 122 of the Complaint.

**COMPLAINT ¶123:**

Defendant, Allstate's conduct did not comport with Plaintiff's reasonable contractual expectations under the R3001 Agreement as bargained by the parties thereto.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 123 of the Complaint, and therefore they are denied.

**COMPLAINT ¶124:**

Plaintiff has been harmed and damaged by the conduct of the Defendant, Allstate.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 124 of the Complaint.

**COMPLAINT ¶125:**

Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 123 of the Complaint, and therefore they are denied.

**COMPLAINT ¶126:**

Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable provisions of the R3001 Agreement and governing provisions of Florida Law.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 126 of the Complaint.

**COMPLAINT ¶127:**

Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**ANSWER:**

Paragraph 127 of the Complaint does not contain any allegations against Allstate to

which a response is required. To the extent Paragraph 127 does contain factual allegations

against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of

punitive damages pursuant to §762.72 Florida Statutes.

49055003v.1

**COUNT III:**
**VIOLATION OF FLORIDA'S DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**

**COMPLAINT ¶128:**

Plaintiffs expressly realleges and reincorporates paragraphs 1, 2, 3, 4, 5, 7-69, 75, 77, 78, 79, 80, 81, 83, 84, 86, 90-105 above as if fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing

allegations as if set forth herein in full.

**COMPLAINT ¶129:**

At all times material hereto Plaintiff was a "consumer" as defined in Florida Statute, Title XXXIII Regulation of Trade, Commerce, Investments, Solicitations, Chapter 501 Consumer Protection Part II, of the Florida Deceptive and Unfair Trade Practices (Act) (hereinafter "the Act") (§§ 501.201-501.213, § 501.203(7), as "individual".

**ANSWER:**

Allstate denies the allegations contained in Paragraph 129 of the Complaint.

**COMPLAINT ¶130:**

At all times material hereto Plaintiff was an "interested party or person" as defined in the Act, § 501.203 (6), as both an interested party and person affected by a violation of the Act.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 130 of the Complaint.

**COMPLAINT ¶131:**

At all times material hereto Allstate engaged in "trade or commerce," as defined in the Act, § 501.203 (8), by advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or an property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever, situated, including the conduct of any trade or commerce, however denominated.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 131 of the Complaint.

49055003v.1

**COMPLAINT ¶132:**

At all times Allstate offered a service in the form of insurance policies for customers procured by Plaintiff as an Exclusive Agent with Allstate and is a part of the Allstate Exclusive Agency program.

**ANSWER:**

Allstate admits that Plaintiff operated as an authorized Allstate Exclusive Agent between

August 1, 2013 and October 14, 2015, and admits that during that time, Plaintiff was permitted to

sell Allstate products and services pursuant to the terms of the EA Agreement. To the extent

Paragraph 132 of the Complaint contains additional factual allegations against Allstate, they are

denied.

**COMPLAINT ¶133:**

At all times material hereto Allstate engaged in the aforesaid trade or commerce with a "thing of value" as defined in the Act, § 501.203 (9) to include, without limitation, moneys, certificates, benefits, credentials, economic interest, or professional opportunity further included, without limitation the ability to solicit the general public to purchase the insurance and/or investment products offered by the Defendant and the right to receive remuneration in connection with the named activity on a recurring basis and the opportunity to build a book of business, and sell such interest or receive a termination payment pursuant to the terms of the R3001 Agreement.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 133 of the Complaint.

**COMPLAINT ¶134:**

At all times material Allstate violated the Act § 501.204 (1) and (2) by engaging in unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 134 of the Complaint.

**COMPLAINT ¶135:**

At all times material Plaintiff was misled as a consumer and he has been aggrieved by Allstate's violations of the Act.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 135 of the Complaint.

**COMPLAINT ¶136:**

At all times material Plaintiff acted reasonably in the circumstances.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 136 of the Complaint.

**COMPLAINT ¶137:**

At all times material the aforementioned and stated conduct, material misrepresentations and material omissions were unconscionable, unfair, deceptive, and likely to cause injury to a reasonable relying consumer.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 137 of the Complaint.

**COMPLAINT ¶138:**

At all times material, the aforesaid and stated conduct, material misrepresentations, and material omissions and nondisclosures were likely to mislead a consumer.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 138 of the Complaint.

**COMPLAINT ¶139:**

As a direct and proximate result of Allstate's violation of the Act, Plaintiff has been damaged.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 139 of the Complaint.

**COMPLAINT ¶140:**

The provisions of Florida Statute §501.212(4)(a) does not apply to this action as the matters addressed herein are not regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission of the State of Florida.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 140 of the Complaint.

**COMPLAINT ¶141:**

The Plaintiff has had to retain the undersigned attorneys to represent him in connection with this matter and is responsible and obligated to pay the same a reasonable attorney's fee for the services rendered in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 141 of the Complaint, and therefore they are denied.

**COMPLAINT ¶142:**

Pursuant to Florida Statute § 501.211 because the Plaintiff have suffered losses as a result of Allstate's violation of the Act, he is entitled to recover actual damages, plus attorney's fees and court costs as provided in Florida Statute § 501.2105 from Allstate.

**ANSWER:**

Paragraph 142 of the Complaint does not contain any allegations against Allstate to

which a response is required. To the extent Paragraph 142 does contain factual allegations

against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of

damages, fees, or costs pursuant to Florida Statute § 501.211.

**COUNT IV:**
**TORTIOUS INTERFERENCE WITH**
**BUSINESS CONTRACTUAL RELATIONSHIP**

**COMPLAINT ¶143:**

Plaintiff expressly realleges and reincorporates paragraphs 1-18, 34, 35, 36, 37, 38, 42, 54, 55, 62, 63, 64, 70, 71, 72, 73, 74, 76, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89 and 103 above, as if more fully set forth herein.

**ANSWER:**

Allstate expressly adopts, realleges, and incorporates its responses to the foregoing

allegations as if set forth herein in full.

**COMPLAINT ¶144:**

Prior to the solicitation of Dario Rios and upon information and belief other customers in the BOB in which Plaintiff had an economic interest, Plaintiff and the Defendant, Allstate had a business relationship existing between them in which Defendant, Yero, Inc. was aware.

**ANSWER:**

Allstate admits that it was party to a contract with Plaintiff, *i.e.*, the EA Agreement,

between August 1, 2013 and October 14, 2015. To the extent Paragraph 144 of the Complaint

asserts additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶145:**

The business relationship referred to in Paragraph 141., above was an actual identifiable agreement for Plaintiff to be able to market and sell his economic interest in the BOB to an "outside" buyer intact without erosion by solicitation of customer within or identified to the BOB, thus, holding intact the continuity and marketability of the economic interest to potential "outside" buyers at a level of value dictated within the market therefore.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 145 of the complaint.

**COMPLAINT ¶146:**

Defendant, Yero, Inc.'s principal, Conrado Yero, as an Exclusive Allstate Agent independent contractor himself had at all times material hereto knowledge of Plaintiffs economic interest itself having the same or substantially similar business relationship with the Defendant, Allstate himself as the Plaintiff.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 146 of the Complaint, and therefore they are denied.

**COMPLAINT ¶147:**

Through its direct solicitation of customer in the BOB of Allstate Products in which comprised Plaintiff's economic interest, Defendant, Yero, Inc. intentionally and unjustifiably interfered with the relationship referred to in Paragraph 141, supra.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 147 of the Complaint.

49055003v.1

**COMPLAINT ¶148:**

As a direct result of the interference, there have been breaches of the relationship referred to in Paragraph 141, supra, which include but are not limited to the difficulty of Plaintiff to attract "outside" buyers for the purchase his economic interest in the BOB due to the aggressive and unwarranted solicitation of customers in the BOB during the 90 day period Plaintiff was given by the Defendant, Allstate to sell his economic interest to only an "outside" buyer.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 148 of the Complaint.

**COMPLAINT ¶149:**

Also, but not limited thereto, because Defendant, Yero, Inc. was actively soliciting customer away from the BOB in which Plaintiff had an economic interest, Defendant, Allstate was, upon information and belief disinclined to acquiesce to Plaintiff's request to grant an extension of the 90 day period because Allstate already knew that the Defendant, Yero, Inc. was actively seeking to convert the customers of the BOB built by Plaintiff for the BOB it maintained its own economic interest. Accordingly, Defendant, Yero, Inc.'s actions in this matter had made Plaintiff economic interest difficult to market and sell to an "outside" buyer and also less financially lucrative to Plaintiff.

**ANSWER:**

 Allstate denies the allegations contained in Paragraph 149 of the Complaint.

**COMPLAINT ¶150:**

As a proximate result of the conduct of the Defendant, Yero, Inc. as described and set forth herein Plaintiff was damaged in an amount in excess of the jurisdictional limits of this Court believed to exceed $750,000.00, the exact amount of which will be proven at the time of trial. When Plaintiff has ascertained the full amount of his damages, he will seek leave of Court to amend this Complaint accordingly.

**ANSWER:**

Allstate admits that Plaintiff has alleged damages in excess of $75,000 in this case, and

that such damages give rise to diversity jurisdiction in this Court pursuant to 28 U.S.C. § 1332.

Nonetheless, Allstate denies it has caused any damage to Plaintiff. To the extent Paragraph 150

of the Complaint asserts any additional factual allegations against Allstate, they are denied.

**COMPLAINT ¶151:**

Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

**ANSWER:**

Allstate is without knowledge or information sufficient to admit or deny the allegations

contained in Paragraph 151 of the Complaint, and therefore they are denied.

**COMPLAINT ¶152:**

Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable and governing provisions of Florida Law.

**ANSWER:**

Allstate denies the allegations contained in Paragraph 152 of the Complaint.

**COMPLAINT ¶153:**

Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**ANSWER:**

Paragraph 153 of the Complaint does not contain any allegations against Allstate to

which a response is required. To the extent Paragraph 153 does contain factual allegations

against Allstate, they are denied. Allstate further denies that Plaintiff deserves an award of

punitive damages pursuant to §762.72 Florida Statutes.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs' Complaint fails to state a claim in law or in fact that can be granted, and

therefore the Complaint should be dismissed with prejudice.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

47

## THIRD DEFENSE

Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing against Allstate fail as a matter of law because Allstate lawfully terminated the EA Agreements due to Plaintiff's prior breach.

WHEREFORE, Defendant Allstate Insurance Corporation seeks entry of judgment against Plaintiff with respect to all counts contained in the Complaint, as well as for any other relief this Court deems just and proper.


Dated: September 6, 2018                    Respectfully submitted,

                                            SEYFARTH SHAW LLP

                                            */s/ Salomon Laguerre*
                                            Salomon Laguerre
                                            Florida Bar No. 092470
                                            slguerre@seyfarth.com
                                            1075 Peachtree St. NE, Suite 2500
                                            Atlanta, Georgia 30309-3958
                                            Telephone: (404) 885-1500
                                            Facsimile: (404) 892-7056

                                            *Counsel for Defendant*
                                            *Allstate Insurance Company*

49055003v.1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ALLWYN JOURDAN,

        Plaintiff,

    v.                                                                    Case No. 1:18-cv-23561-KMM

ALLSTATE INSURANCE COMPANY, a
Foreign Illinois Registered Corporation, and
CONRADO YERO, INC., a Florida For
Profit Corporation,

        Defendants.

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 6, 2018, I electronically filed the foregoing

DEFENDANT ALLSTATE INSURANCE COMPANY'S ANSWER AND DEFENSES TO

COMPLAINT and that it is available for viewing and downloading from the Court's CM/ECF

system, and that the participants in this case that are registered CM/ECF users will be served

electronically by the CM/ECF system. I further certify that copies of the foregoing document

were served via e-mail and U.S. Mail to the attorney of record for Plaintiff Allwyn Jordan at the

following address:

      Tina El Fadel
      eservice@ks-law.com
      K/S Attorneys at Law
      4800 N. Federal Highway
      Suite 103-B
      Boca Raton, Florida 33431

and via email and U.S. Mail to the attorneys of record for Defendant Conrado Yero, Inc. at the
following address:

      Blake S. Sando
      blake.sando@csklegal.com
      Maria D. Vera

49055003v.1

maria.vera@csklegal.com
Cole, Scott & Kissane, P.A.
Cole, Scott & Kissane Building
9150 S. Dadeland Blvd., Suite 1400
P.O. Box 569015
Miami, Florida 33256


*/s/ Salomon Laguerre*
Salomon Laguerre

*Counsel for Defendant*
*Allstate Insurance Company*

50