# EXHIBIT A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ALLWYN JOURDAN,

        Plaintiff,

vs.

                                      CASE NO.:
                                      Division: Circuit Civil

ALLSTATE INSURANCE COMPANY,
a Foreign Illinois Registered Corporation,
CONRADO YERO, INC., a Florida for
Profit Corporation

        Defendants.

_____/

## **COMPLAINT**

COMES NOW, Plaintiff, ALLWYN JOURDAN ("Jourdan" or "Plaintiff"), by and through his undersigned counsel, sues Defendant, ALLSTATE INSURANCE COMPANY, a Foreign Illinois Registered Corporation ("Allstate" or "Defendant, Allstate" or "Company") and Conrado Yero, Inc. a State of Florida Corporation ("Yero, Inc. or "Defendant, Yero, Inc.:) and alleges:

### **PARTIES VENUE AND JURISDICTION**

1.      Plaintiff is an individual, over the age of eighteen (18), and at all times material to this action resides in Miami-Dade County, State of Florida.

2.      Defendant, ALLSTATE, is a duly organized and registered State of Illinois Corporation, registered to do business in all 50 States of the United States of America and thus is registered to do business in the State of Florida as a foreign corporation with a principal address of 2775 Sanders Road, Northbrook, Illinois 60062, a mailing address of 3075 Sanders Road, H1E, Northbrook, Illinois 60062 and maintains offices for the conduct of its business in the State of Florida and specifically in Miami-Dade County, Florida.

3.      Allstate maintains a Registered Agent Name and Address in the State of Florida of: CHIEF FINANCIAL OFFICER as P.O. Box 6200 (32314-6200) and 200 E. Gaines Street, Tallahassee, Florida 32399-0000.

4.      Allstate, as a foreign corporation doing business in the State of Florida has offices, agents or other representatives in Miami-Dade County, Florida.

5.      The Court also has jurisdiction over Allstate pursuant to Florida Statute §§48.193(1)(a)(1),(4) and (7) and/or by voluntary submission.

6.      Defendant, Yero, Inc., is a duly organized and registered State of Florida Corporation registered to do business in the State of Florida, with the Department of State, Division of Corporations.  Defendant, Yero, Inc. maintains a principal address of 10030 S.W. 40th Street, #A, Miami, Miami-Dade County, Florida 33165.  The Defendant, Yero, Inc. has as its Registered Agent Conrado Yero with a registered agent address of 10030 S.W. 40th Street, #A, Miami, Miami-Dade County, Florida 33165.

7.      This is an action for damages which exceeds the minimum jurisdictional limits of the Court, exclusive of interest, costs and attorney's fees.

8.      Venue is proper in MIAMI-DADE County because it is the location in which the parties to this action transacted there business dealings with one another and Allstate and Yero, Inc. maintain offices in MIAMI-DADE County for the conduct of their respective businesses in the State of Florida.

## STATEMENT OF THE FACTS

9.      In or around the mid to late 1990's forward Allstate converted, in the State of Florida, it's employee licensed insurance agent business model and/or business structure of employee agents to that of exclusive agents as independent contractors utilizing what is known as

the R3001 Exclusive Agency Agreement.  Since the inception of the Exclusive Agency business plan and model by Allstate there have been several iterations of the R3001 Exclusive Agency Agreement with different designations such as R3001, R3001A, R3001C and R3001S.

10.     At all times material hereto the R3001 Exclusive Agency Agreement, and it's various iterations, incorporates within its terms a Supplemental Agreement and a Independent Contractors Manual, as were amended from time to time, at the discretion of Allstate and the terms thereof applied to each iteration and/or type of Exclusive Agency Agreement used since the mid to late 1990's forward by Allstate as part of its exclusive agency/independent contractor business plan and model as adopted and changed and readopted over the course of time.

11.     Allstate as of the time of the filing of these actions markets its Exclusive Agency Program with slogans such as:

a.     "Good Builds a Life"*[1];

b.     "It's good to be your own boss"*;

c.     "Drive and discipline are good for business"*;

d.     "It's a good balance"*;

e.     "Earn a good living"*;

f.     "Live a good life"*;

g.     "A marketing powerhouse to help grow your business"*;

h.     "A brand that has your back"**[2];

---

[1]     (*) Above quotes are subject to the stated limitation  of: "Subject to all terms and conditions as outlined in the Allstate R3001 Exclusive Agency Agreement and Exclusive Agency program materials.  Allstate agents are not franchisees; rather they are exclusive agent independent contractors and are not employed by Allstate.  Allstate is an Equal Opportunity Company.  Allstate Insurance Company, Northbrook, IL. In New Jersey, Allstate Insurance Company, Bridgewater, NJ. ©2016 Allstate".

[2] (**) Above quotes are subject to the stated limitation of:  "Subject to the terms of Allstate Agency Agreement".

i.      "Do you have what it takes?"\*;

j      "How much money will I make?"\*;

k.      "The sky's the limit"\*\*;

m.      "Build a legacy"\*\*; and

n.      "As an Agency Owner, you own an economic interest in your business[.] This gives you the freedom to sell to a qualified buyer or Allstate, or pass it on to your children or another family member."\*\*

All of the foregoing quotes and limitations thereon are attached hereto and made apart hereof and marked as Plaintiff's Composite Exhibit "A".

12.      Allstate in its Exclusive Agency Independent Contractor's marketing materials states to prospective new Exclusive Independent Contractor Agents that the process to become an Allstate Exclusive Agent Independent Contractor "takes about three to nine months from initial interest to opening your agency's doors." *See* Plaintiff's Composite Exhibit "A".

13.      At all times material hereto Plaintiff is an individual registered with and licensed by the Florida Department of Financial Services, State of Florida to sell or offer to sell insurance and insurance related products and financial investment products.

14.      In mid to late 2012, Plaintiff became interested in becoming an Allstate Insurance agent and viewed various company marketing materials of Allstate of its Exclusive Agency Program ending with Plaintiff and Defendant entering into an R3001S Exclusive Agency Agreement dated August 1, 2013 and incorporating therein the terms of the Supplement for the R3001 Agreement dated February 1, 2013, the Exclusive Agency Independent Contractor Reference Guide dated February 25, 2013, the Independent Contractor Manual Revision Notice dated October 18, 2012, the Allstate Agency Standards Revision Notice dated October 8, 2012 and

the Schedule of Commissions for the Allstate Financial Services, LLC Registered Representative Agreement (hereinafter referred to as the "Contract" or "R3001 Agreement"). All of the foregoing referenced documents are attached hereto and made apart hereof as Plaintiff's Composite Exhibit "B".[3]

15.     Between mid to late 2012 to August 2013, Plaintiff made application to become an Allstate Exclusive Agent, Independent Contract and as required by Allstate expended money upon, without limitation,

- reserve financial bank deposits,

- attended Allstate University in the State of Illinois,

- leased a business premises,

- established a business plan for an insurance agency selling exclusively the Allstate insurance and investment products,

- leases commercial business space, arranges for and expends money to establish utilities services for the leasehold obtained,

- engaged in the expenditure of money to market Allstate insurance and investment products and prepared to and hire employees to handle office and sales operations of an insurance agency.

16.     Plaintiff commenced business as an Allstate Exclusive Agent on or about August 1, 2013 as a "Start Up" agent.

---

[3]. Plaintiff has included a copy of the Allstate Financial Services, LLC schedule of Commissions as part of the Contract and Plaintiff's Composite Exhibit "B" as said document relates to the Plaintiff tenure as an Exclusive Agent with Allstate and is a part of the Allstate Exclusive Agency program but as of the time of the filing of this Complaint Plaintiff is without sufficient knowledge to name Allstate Financial Services, LLC as a named defendant herein and reserves to amend to add said company as an additional defendant pending discovery to be conducted over the course of this litigation yielding information warranting the additional party hereto.

17.     A "Start Up" agent is an Allstate Exclusive Agent who starts his or her own insurance agency as an exclusive agent selling only Allstate insurance products as an independent contractor without any policies or business earnings, commissions, or payments (hereinafter "Allstate Product"), at the time of commencing operation of an insurance agency and must go out and sell and/or produce Allstate Product new business or recaptured eligible prior Allstate Product pursuant to the terms and conditions of the R3001 Agreement and the Company.

18.     Between August 1, 2013 and October 14, 2015, Plaintiff operated an Allstate Exclusive Agency as an independent contractor insurance agency selling Allstate Product, building an economic interest in the Book of Business (hereinafter "Book of Business", "BOB" or "customers") in the State of Florida pursuant to the R3001 Agreement.

19.     In and between June, 2015 and February, 2016, Mr. Mike Sheely was associated with the Defendant, Allstate as a Field Senior Vice President in the State of Florida.

20.     In and between June, 2015 and February, 2016, Mr. Mark Canfield was associated with the Defendant, Allstate as a Territorial Sales Leader in the State of Florida.

21.     In and between June, 2015 and February, 2016, Janice Brown-Francois was associated with the Defendant, Allstate as a Field Sales Leader in the State of Florida.

22.     In and between June 2015 and February, 2016, Marcelo Beruvides was associated with the Defendant, Allstate as a Filed Sales Leader in the State of Florida.

23.     In and between June, 2015 and February, 2016, Lindsay Rivera was part of the Human Resource Officer Department for the Defendant, Allstate in the State of Florida.

24.     In and between June, 2015 and February, 2016, Laine Sutkay was part of the in house legal department for the Defendant, Allstate in the State of Florida and/or the State of Illinois.

25.     In and between June, 2015 and February, 2016, Helen Sylvester was associated with the Defendant, Allstate as a Territory Sales Leader in the State of Florida.

26.     On or about July 29, 2015, Lindsay Rivera contacted the Plaintiff to advise him that Laine Sutkay wanted to meet with Plaintiff at the Allstate office in Doral, Miami-Dade County, Florida on July 30, 2015 and that he was to bring certain files of customers of the BOB generated by his agency with him to the meeting.

27.     On or about July 30, 2015, Plaintiff appeared at the Defendant, Allstate's Doral, Miami-Dade County, Florida office for the scheduled meeting with Ms. Sutkay and was surprised that he was not there for a meeting as represented by Ms. Rivera, but for a Spanish Inquisition Socratic styled videotaped investigation conducted by Ms. Sutkay concerning discounts given to certain customers of the BOB.  The videotaped inquisition ended with Ms. Sutkay requesting additional customer files, which were provided via electronic mail by Plaintiff to Ms. Sutkay on July 30, 2015.

28.     Ms. Sutkay, also on July 30, 2015 independently conducted an inquest using videotape of Plaintiff's employees known as Leesday Sanmartin and Sabrina Contreras about customer files generated by Plaintiff's agency.

29.     Prior to the July 30, 2015 videotaped inquisition styled interviews of Ms. Sutkay, Janice Brown for Defendant, Allstate assured Plaintiff that the interviews to be conducted by Ms. Sutkay were routine and the chances of closing Plaintiff's office by the Defendant, Allstate were non-existent in response to Plaintiff's inquiry concerning the same and the past industry known practices of Allstate of shutting agents down and affording little to no time to obtain a buyer for the contractually provided economic interest of the exclusive agent in the BOB.

30.     Janice Brown, after the July 30, 2015 videotaped inquisition conducted by Ms. Sutkay for Defendant, Allstate, again represented to Plaintiff and assured Plaintiff that the inquisition conducted with Plaintiff, Leeday Sanmartin and Sabrina Contreras by Ms. Sutkay would not result in the closing of his exclusive agency with Allstate.

31.     Based upon the representations and assurances of Ms. Brown to Plaintiff, Plaintiff did not undertake to seek a buyer of his economic interest in his exclusive agency's "Book of Business" in July, August or September 2015.

32.     On or about October 14, 2015, Plaintiff was scheduled to meet with Mark Canfield and Janice Brown at the Defendant, Allstate's Regional Office in Doral, Florida.

33.     Plaintiff met with Mark Canfield and Janice Brown at the Defendant, Allstate Regional Office in Doral, Miami-Dade County, Florida on October 14, 2015.

34.     On October 14, 2015 Plaintiff was handed a letter dated October 14, 2015 and signed by Mr. Canfield notifying Plaintiff of his termination as an Allstate Exclusive Agent, Independent Contractor and termination of the Allstate's R3001S Agreement effective immediately.  A copy of the letter of termination is attached hereto and marked Exhibit "C".

35.     The October 14, 2015, termination letter, (See Exhibit "C"), notified Plaintiff that his R3001 Agreement was terminated by Allstate for cause. Plaintiff disputed his agency's termination for cause by Allstate, as it was merely a guise to eliminate his agency's right to receive renewal commissions and receive payment for his economic interest in the BOB.

36.     On or about October 14, 2015, Defendant, Allstate sent its agents to retrieve all of Allstate property, files, computers and ended Plaintiff's access to the customers in the Book of Business effective date same.

37.     The R3001 Agreement entered into by Plaintiff and Defendant provides that Plaintiff, as an Exclusive Agent, Independent Contract, is to have an economic interest in the Book of Business generated by him and his agency as a start-up and provides as to how the value of the termination payment is to be calculated regardless of how the R3001 Agreement is terminated, meaning for cause or without cause should the Exclusive Agent elect to receive a termination payment for such interest rather than sale the economic interest to a third party or another Exclusive Agent, if permitted by Allstate.

38.     The R3001 Agreement provides that without regard as to the reason of termination Plaintiff was to have either termination payment or to exercise the right to sell Plaintiff's economic interest in the BOB.

39.     Nowhere in the R3001 Agreement are the terms of Florida Statute §626.754 mentioned, referenced or addressed.

40.     Nowhere in the R3001 Agreement is Plaintiff or Defendant, Allstate referred to or addressed as a "direct writing insurers" as address in Florida Statute §626.754(2).

41.     Nowhere in the R3001 Agreement is Plaintiff or Defendant, Allstate referred to or addressed as "agents and insurers between whom the relationship of employer and employee exists" as address in Florida Statute §626.754(2).

42.     Pursuant to the terms of the R3001 Agreement Plaintiff at all times material hereto was an exclusive agent, independent contractor of Allstate.

43.     Pursuant to the terms of the R3001 Agreement Plaintiff at all times material hereto was not an agent of a direct writing insurer.

44.     Pursuant to the terms of the R3001 Agreement Plaintiff at all time material hereto was not an agent with Defendant, Allstate with whom an employer/employee relationship existed.

45.     The language of Florida Statute §626.754(1) at all times material hereto applied to Plaintiff and Defendant, Allstate.

46.     Pursuant to the terms of the R3001 Agreement, after October 14, 2015, Defendant, Allstate prevented Plaintiff from being able to contract or service Allstate Product customers to preserve the level of sold products and secure renewals of the Book of Business.

47.     Pursuant to the terms of the R3001 Agreement, after October 14, 2015, Defendant, Allstate prevented Plaintiff from being able to contract or service Allstate Product customer to preserve the value and level of his economic interest in the BOB for sale to an approved outside party.

48.     Pursuant to the terms of the R3001 Agreement, allstate barred and prohibited Plaintiff from any contact with customer in the BOB on October 14, 2015 and at all times thereafter.

49.     The language and specific protections afforded to Plaintiff by Florida Statute §626.754(1) were not acknowledged, provided or followed by the Defendant, Allstate after October 14, 2015.

50.     At the time of the October 14, 2015 meeting with Mr. Canfield and Ms. Brown at the Allstate office in Doral, Miami-Dade County, Florida, Plaintiff was informed by Mr. Canfield that Plaintiff was to receive renewal business of the Book of Business for the ensuing 90 days and that Plaintiff was to be afforded 90 days within which to sell his economic interest in the BOB or, if eligible, receive a termination payment at Plaintiff's election.

51.     As of the date of the filing of this Complaint Allstate has failed and thus refused to pay to Plaintiff any earned commissions, credited any renewal business to the BOB accruing during the 90 days as he was advised by Allstate's Mark Canfield on October 14, 2015.

52.     The R3001 Agreement is silent as to the origin of the 90 day period Plaintiff was afforded by the Defendant, Allstate through its agent Mr. Canfield to sell his economic interest in the BOB.

53.     Prior iterations of the R3001 Agreement did contain a 90 day period for the sale of an exclusive agent's interest in the BOB post termination.

54.     At the time of the October 14, 2015 meeting with Mr. Canfield and Ms. Brown at the Allstate office in Doral, Florida, Plaintiff asked if he would be permitted by Allstate to sell his economic interest in the Book of Business to another Allstate Exclusive Agent, Independent Contractor and was told by Mr. Canfield for the Defendant, Allstate that Allstate would only consider "outside" buyers and denied Plaintiff's request to sell his economic interest in the Book of Business to another already existing Allstate Exclusive Agent, Independent Contractor. There is no provision in the R3001 Agreement which restricts Plaintiff to only being able to sell his contractually bargained for right to sell his economic interest in the BOB to only "outside" buyers.

55.     As of December 31, 2015, Plaintiff's annual generated Product premiums or the Book of Business yielded approximately $1,907,497.00 dollars in premium payment to Allstate annually.

56.     Between August 1, 2013 and December 31, 2015, the Book of Business generated by Plaintiff had an average renewal rate of 93% or better.

57.     In Start-Up costs for Allstate Exclusive Agency Plaintiff expended in excess of $550,000.00.

58.     Allstate, in the R3001 Agreement, reserves sole and exclusive discretion to approve or not the sale to a proposed buyer of the economic interest of the Exclusive Agency, Independent Contractor Book of Business should the agent, such as Plaintiff, make the election to sell same.

59.     Plaintiff elected to exercise his right to sell his economic interest in the BOB and between October 14, 2015 and January 31, 2016, Plaintiff presented three (3) "outside" buyers to Allstate to purchase his economic interest in the Book of Business.  All three (3) of Plaintiff's buyers were rejected or not approved by Allstate during the 90 day period.

60.     The R3001 Agreement is silent as to what is to come of Plaintiff's economic interest in the Book of Business in the event it is not sold to an Allstate approved "outside" buyer.

61.     Allstate took over the servicing of customer and Allstate Products, including but not limited to the renewals thereof of the Book of Business from Plaintiff as of October 14, 2015.

62.     Allstate barred and prohibited Plaintiff from any contact with customer in the BOB on October 14, 2015 and at all times thereafter.

63.     The R3001 Agreement provides that Allstate has ownership of the Allstate Product and the customer information in a BOB and that the Plaintiff has the right to sell his or her economic interest in a BOB to an Allstate approved buyer of such interest.

64.     Ninety (90) days from October 14, 2015 is to January 12, 2016.

65.     The October 14, 2015 termination letter provided Plaintiff until February 1, 2016 to complete the sale of his economic interest in the BOB.

66.     The terms of the R3001 Agreement entered into by the Plaintiff and Allstate require the Plaintiff to be vested in order to be eligible to receive a termination payment.

67.     Plaintiff's exclusive agency as a start-up was required under the R3001 Agreement to vest for five (5) years before being eligible for Plaintiff to be entitled to elect a termination payment from Allstate upon termination of the R3001 Agreement.

68.     Plaintiff's exclusive agency as of October 14, 2015 was not vested for five (5) years.

69.     Pursuant to the terms of the R3001 Agreement, Plaintiff on October 14, 2015 or at any time thereafter was not entitled to elect to receive a termination payment from Allstate. The only way for Plaintiff to be compensated for the business generated by his agency for his agency and Allstate was to sell Plaintiff's economic interest he contractually interest in the BOB to an "outside" buyer.

70.     On February 8, 2016, Plaintiff was notified by Helen Sylvester, Territory Sales Leader for Defendant, Allstate that Plaintiff's termination was effective January 31, 2016, that Plaintiff did not present an approved buyer for his economic interest in the BOB during the imposed 90 day period or elect to receive a termination payment same and that no extension to the 90 day period would be given to Plaintiff to find a buyer of his economic interest in the BOB. A copy of Ms. Sylvester's February 8, 2016 email to Plaintiff is attached and marked Exhibit "D".

71.     At all times material hereto Conrado, Yero was a State of Florida licensed insurance agent and is an Allstate Exclusive Agent, Independent Contractor.

72.     At all times material hereto Conrado Yero is the principal of the Defendant, Yero, Inc.

73.     At all times material hereto Defendant, Yero, Inc. is not itself independently licensed to sell or offer for sale insurance or financial investment products, including the Defendant, Allstate's Products by the State of Florida in the State of Florida.

74.     On January 25, 2016, Conrado Yero signed a letter as an "Allstate Exclusive Agent" for himself as a licensed agent and for and on behalf of Defendant, Yero, Inc., addressed to Dario Rios directly soliciting Dario Rios away from the BOB generated by Plaintiff of the Defendant, Allstate's Products. A copy of the January 25, 2016 letter is attached and marked Exhibit "E".

75.     On January 25, 2016, Dario Rios was a customer of Allstate and a part of the economic interest of the BOB in which Plaintiff was marketing for sale during the period provided by Allstate post October 14, 2015.

76.     On January 25, 2016, Defendant, Allstate knew Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest therein.

77.     On January 25, 2016, Defendant, Yero, Inc., knew Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest therein.

78.     On January 25, 2016, Defendant, Allstate knew that Plaintiff was not vested for five (5) years and not entitled to elect to receive a termination payment.

79.     On January 25, 2016, Defendant, Allstate knew that it had prohibited Plaintiff from selling his economic interest in the BOB to other existing Allstate exclusive agents.

80.     On October 14, 2016, Defendant, Allstate knew that it could take an outside buyer three (3) to nine (9) months to be approved, train, set-up and open an Exclusive Agency, Independent Contractor business selling or offering for sale Allstate Products to consumers.

81.     On January 25, 2016, Defendant, Allstate knew that it had the contractual right to approve or disapprove buyers procured by Plaintiff and that it had already disapproved two (2) of Plaintiff's three (3) proposed buyers of his economic interest in the BOB.

82.     On or before January 25, 2016, Defendant, Allstate made Conrado Yero for Defendant, Yero, Inc., aware of the customers or some of the customers in the BOB generated by Plaintiff as a start-up exclusive agent, independent contractor.

83.     On or before January 25, 2016, Defendant, Allstate disclosed the name, address, policy information of Dario Rios to Conrado Yero and thus the Defendant, Yero, Inc.

84.     On January 25, 2016, Conrado Yero and thus Defendant, Yero, Inc., knew it was directly soliciting customers of the BOB in which Plaintiff was trying to sell his economic interest in to outside buyers.

85.     At no time material hereto were Conrado Yero or Yero, Inc., an "outside" buyer.

86.     At no time material hereto, did Plaintiff ever contact or discuss the sale of his economic interest in the BOB with or to Conrado Yero or the Defendant, Yero, Inc., with the Defendant, Allstate, Conrado Yero and/or the Defendant, Yero, Inc.

87.     Conrado Yero and thus Defendant, Yero, Inc., has the same right to sell his/its economic interest in the BOB generated by him/it or receive, if eligible upon vesting, a termination payment should his/its R3001 Agreement be terminated.

88.     The value of the BOB for the termination payment is dictated by the terms of the R3001 Agreement, one component of which is the amount of premiums earned and received by Allstate over a specific period of time from the BOB of an exclusive agent.

89.     Defendant, Yero, Inc., within the 90 day period Plaintiff was allotted to sell his economic interest in the BOB, directly solicit the customers in the BOB in which Plaintiff had a contractual economic interest pursuant to the terms of the R3001 Agreement.

90.     Defendant, Yero, Inc., knew of or was informed by the Defendant, Allstate of the termination of the Plaintiff as an Exclusive Allstate Agent and the termination of the Plaintiff's R3001 Agreement with the Defendant, Allstate.

91.     Defendant, Yero, Inc., directly solicited the customers in the BOB generated by Plaintiff in January 2016 knowing Plaintiff was attempting to sell his economic interest in the BOB.

92.     On October 14, 2015, Defendant, Allstate knew that it had contractually prevented the Plaintiff from being able to elect to receive a termination payment as Plaintiff was not vested.

93.     On October 14, 2015, Defendant, Allstate knew that it could contractually prevent the Plaintiff from realizing the benefit of his bargain by the sale of his economic interest in the BOB as in the R3001 Agreement it had reserved unto itself the absolute right to approve or disapprove of any buyer of the economic interest of the Plaintiff in the BOB and at no time did Allstate offer to purchase the economic interest as represented in its solicitation materials.  See Exhibit "A" and Paragraph 11. n. above.

94.     From October 14, 2015 to January 31, 2016, Defendant, Allstate rejected all three buyers Plaintiff presented for approval of Allstate to buy Plaintiff's economic interest in the BOB.

95.     All three "outside" buyers of the economic interest of the Plaintiff in the BOB as submitted by Plaintiff for approval within the 90 day allotted period were capable of purchasing Plaintiff's economic interest and had made formal offers to Plaintiff.

96.     Defendant, Allstate refused to extend the time for Plaintiff to sell his economic interest after the 90 day allotted period acknowledging in said refusal that it had allowed others extensions of time but for reasons stated in the declination email of Ms. Sylvester for the Defendant, Allstate, Plaintiff was not to be afforded such courtesies as had been afforded to others. *See* Exhibit D attached hereto.

97.     The terms of the R3001 Agreement affording the Defendant, Allstate the absolute right to approve or disapprove of the buyer to be procured by Plaintiff for the purchase of his

economic interest in the BOB and in doing so gave Allstate substantial discretion to promote its own self-interest.

98.    The terms of the R3001 Agreement is silent with regard to the methodology or standards to be used by Allstate when exercising its right to approve or disapprove of the buyer to be procured by Plaintiff for the purchase of his economic interest in the BOB during the allotted 90 day time period.

99.    The terms of the R3001 Agreement is silent with regard to the methodology or standards to be used by Allstate when exercising its discretion of whether to allow Plaintiff an extension of the 90 day allotted period for the Plaintiff to procure and sell his economic interest in the BOB.

100.    Plaintiff, at all times material hereto had a legitimate expectation that Allstate would not take an opportunistic advantage due to the reservation of the absolute right to approve or disapprove buyer(s) of his economic interest in the BOB.

101.    Plaintiff, at all times material hereto, had a legitimate expectation that Allstate would not take an opportunistic advantage when exercising its discretion to allow Plaintiff an extension of the 90 day allotted time period for the Plaintiff to sell his economic interest in the BOB.

102.    Insurance Industry commentators, watch-dogs, reporters and investment analysis have over the course of the most recent several years or since 2011 repeatedly discussed, disclosed and reported of Defendant, Allstate business practice of terminating smaller start-up Exclusive Allstate Agents and consolidating the Start-up's BOBs with other larger agencies for financial gain and benefit to itself.

103.     Defendant, Allstate at all times material hereto, by denying Plaintiff access to the customers in the BOB after October 14, 2015 denied Plaintiff of his rights provided to Plaintiff by Florida Statute §626.754.

104.     All conditions precedent to the bringing of this action have been met or waived.

105.     Florida Statute §626.754 provides in pertinent part:

Rights of agent following termination of appointment.

(1)     Following the termination of his or her agency appointment as to an insurer, the agent may for the period herein provided continue to service, and receive from the insurer commissions or other compensation relative to, policies written by him or her for the insurer during the existence of the appointment.  The Agent may countersign all certificates or endorsements necessary to continue such policies to the expiration date thereof, including renewal certificates or endorsements necessary to continue such policies the expiration date thereof, including renewal option periods, and collect and remit premiums due thereon, but shall not otherwise, except with the consent of the insurer, change or modify the policy in any way nor increase the hazards insured against therein.

(2)     This section does not apply as to agents of direct writing insurers or to agents and insurers between whom the relationship of employer and employee exists.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT**</u>

106.     Plaintiffs expressly realleges and reincorporates paragraphs 1, 2, 3, 4, 5, 7—69, 75, 77, 78, 79, 80, 81, 83, 84, 86, and 90—105 above as if fully set forth herein.

107.     At all times material hereto the R3001 Agreement by and between the Plaintiff and the Defendant, Allstate was a valid contract binding upon the Plaintiff and the Defendant, Allstate.

108.     Plaintiff and Defendant, Allstate contracted for the Plaintiff to be able to receive the benefit of an economic interest in the BOB.

109.    Plaintiff was permitted by Allstate to market his economic interest in the BOB to "outside" buyers and did market his economic interest to "outside" buyers as permitted by Allstate from October 14, 2015 to January 31, 2016.

110.    Plaintiff was prevented by the Defendant, Allstate from marketing and/or selling his economic interest in the BOB after January 31, 2016.

111.    Defendant, Allstate breached the R3001 Agreement with Plaintiff by not permitting Plaintiff to market the sale and purchase of the economic interest without interferences of itself and other Allstate agents by direct solicitation of customers in the BOB during the 90 day period, by intentionally denying the purchase of the economic interest to other existing Allstate agents, by promoting its own self financial interest to the detriment of Plaintiff by requiring the buyer of the economic interest be an "outside" buyer, by failing to pay any commissions and accord renewal business to the BOB for the 90 day period as expressed to Plaintiff, at Plaintiff's October 14, 2015 with Defendant, Allstate's representatives and/or as provided by State law, and by such other actions which have been stated in other paragraphs of this Complaint as incorporated within the Count as stated in paragraph 105 above.

112.    The R3001 Agreement provisions do not modify, contravene or waive the provisions of Florida Statute §625.754.

113.    Defendant, Allstate's breaches of the R3001 Agreement and its failure to follow the provisions of Florida Statute §625.754 constitute material breaches of the R3001 Agreement.

114.    Plaintiff has suffered damage as a result of Defendant, Allstate's material breaches of the R3001 Agreement.

115.    Plaintiff has suffered damages as a result of Defendant, Allstate's material breach of the provision of Florida Statute §625.754.

116.    Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

117.    Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable provisions of the R3001 Agreement and governing provisions of Florida Law.

118.    Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**WHEREFORE**, the Plaintiff, Allwyn Jourdan respectfully demands an award of monetary damages against the Defendant, Allstate, pre and post-judgment interest, attorney's fees and taxable costs incurred in the bringing and maintenance of this action and for such other and further relief this Court may deem just and/or equitable.

## COUNT II:
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING

119.    Plaintiffs expressly realleges and reincorporates paragraphs 1—5, 7—69, 75, 77, 78, 79, 80, 81, 83, 84, 86, 90—105 above as if fully set forth herein.

120.    Plaintiff and Defendant, Allstate entered into a contract referred to herein as R3001 Agreement.

121.    Plaintiff did all, or substantially all, of the significant things that the R3001 Agreement required of him to do or was excused by the Defendant, Allstate from having to do those things required of him to market and sell his economic interest in the BOB.

122.     Defendant, Allstate's actions and/or omissions unfairly interfered with Plaintiff's receipt of the R3001 Agreement benefits, i.e. the sale of the economic interest in the BOB post termination of the R3001 Agreement by either party thereto with or without cause.

123.     Defendant, Allstate's conduct did not comport with Plaintiff's reasonable contractual expectations under the R3001 Agreement as bargained by the parties thereto.

124.     Plaintiff has been harmed and damaged by the conduct of the Defendant, Allstate.

125.     Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

126.     Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable provisions of the R3001 Agreement and governing provisions of Florida Law.

127.     Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**WHEREFORE**, the Plaintiff, Allwyn Jourdan respectfully demands an award of monetary damages against the Defendant, Allstate, pre and post-judgment interest, attorney's fees and taxable costs incurred in the bringing and maintenance of this action and for such other and further relief this Court may deem just and/or equitable.

### COUNT III:
### VIOLATION OF FLORIDA'S DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT

128.     Plaintiffs expressly realleges and reincorporates paragraphs 1, 2, 3, 4, 5, 7—69, 75, 77, 78, 79, 80, 81, 83, 84, 86, 90—105 above as if fully set forth herein.

129.    At all times material hereto Plaintiff was a "consumer" as defined in Florida Statute, Title XXXIII Regulation of Trade, Commerce, Investments, Solicitations, Chapter 501 Consumer Protection Part II, of the Florida Deceptive and Unfair Trade Practices (Act) (hereinafter "the Act") (§§ 501.201-501.213, § 501.203(7), as "individual".

130.    At all times material hereto Plaintiff was an "interested party or person" as defined in the Act, § 501.203 (6), as both an interested party and person affected by a violation of the Act.

131.    At all times material hereto Allstate engaged in "trade or commerce," as defined in the Act, § 501.203 (8), by advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or an property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever, situated, including the conduct of any trade or commerce, however denominated.

132.    At all times Allstate offered a service in the form of insurance policies for customers procured by Plaintiff as an Exclusive Agent with Allstate and is a part of the Allstate Exclusive Agency program.

133.    At all times material hereto Allstate engaged in the aforesaid trade or commerce with a "thing of value" as defined in the Act, § 501.203 (9) to include, without limitation, moneys, certificates, benefits, credentials, economic interest, or professional opportunity further included, without limitation the ability to solicit the general public to purchase the insurance and/or investment products offered by the Defendant and the right to receive remuneration in connection with the named activity on a recurring basis and the opportunity to build a book of business, and sell such interest or receive a termination payment pursuant to the terms of the R3001 Agreement.

134.   At all times material Allstate violated the Act § 501.204 (1) and (2) by engaging in unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce.

135.   At all times material Plaintiff was misled as a consumer and he has been aggrieved by Allstate's violations of the Act.

136.   At all times material Plaintiff acted reasonably in the circumstances.

137.   At all times material the aforementioned and stated conduct, material misrepresentations and material omissions were unconscionable, unfair, deceptive, and likely to cause injury to a reasonable relying consumer.

138.   At all times material, the aforesaid and stated conduct, material misrepresentations, and material omissions and nondisclosures were likely to mislead a consumer.

139.   As a direct and proximate result of Allstate's violation of the Act, Plaintiff has been damaged.

140.   The provisions of Florida Statute §501.212(4)(a) does not apply to this action as the matters addressed herein are not regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission of the State of Florida.

141.   The Plaintiff has had to retain the undersigned attorneys to represent him in connection with this matter and is responsible and obligated to pay the same a reasonable attorney's fee for the services rendered in connection herewith.

142.   Pursuant to Florida Statute § 501.211 because the Plaintiff have suffered losses as a result of Allstate's violation of the Act, he is entitled to recover actual damages, plus attorney's fees and court costs as provided in Florida Statute § 501.2105 from Allstate.

**WHEREFORE**, the Plaintiff, Allwyn Jourdan respectfully demands an award of monetary damages against the Defendant, Allstate, pre and post-judgment interest, attorney's fees and taxable costs incurred in the bringing and maintenance of this action and for such other and further relief this Court may deem just and/or equitable.

<u>**COUNT IV: TORTIOUS INTERFERENCE WITH**</u>
<u>**BUSINESS CONTRACTUAL RELATIONSHIP**</u>

143.    Plaintiff expressly realleges and reincorporates paragraphs 1—18, 34, 35, 36, 37, 38, 42, 54, 55, 62, 63, 64, 70, 71, 72, 73, 74, 76, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89 and 103 above, as if more fully set forth herein.

144.    Prior to the solicitation of Dario Rios and upon information and belief other customers in the BOB  in which Plaintiff had an economic interest, Plaintiff and the Defendant, Allstate had a business relationship existing between them in which Defendant, Yero, Inc. was aware.

145.    The business relationship referred to in Paragraph 141., above was an actual identifiable agreement for Plaintiff to be able to market and sell his economic interest in the BOB to an "outside" buyer intact without erosion by solicitation of customer within or identified to the BOB, thus, holding intact the continuity and marketability of the economic interest to potential "outside" buyers at a level of value dictated within the market therefore.

146.    Defendant, Yero, Inc.'s principal, Conrado Yero, as an Exclusive Allstate Agent independent contractor himself had at all times material hereto knowledge of Plaintiff's economic interest itself having the same or substantially similar business relationship with the Defendant, Allstate himself as the Plaintiff.

147. Through its direct solicitation of customer in the BOB of Allstate Products in which comprised Plaintiff's economic interest, Defendant, Yero, Inc. intentionally and unjustifiably interfered with the relationship referred to in Paragraph 141, supra.

148. As a direct result of the interference, there have been breaches of the relationship referred to in Paragraph 141, supra, which include but are not limited to the difficulty of Plaintiff to attract "outside" buyers for the purchase his economic interest in the BOB due to the aggressive and unwarranted solicitation of customers in the BOB during the 90 day period Plaintiff was given by the Defendant, Allstate to sell his economic interest to only an "outside" buyer.

149. Also, but not limited thereto, because Defendant, Yero, Inc. was actively soliciting customer away from the BOB in which Plaintiff had an economic interest, Defendant, Allstate was, upon information and belief disinclined to acquiesce to Plaintiff's request to grant an extension of the 90 day period because Allstate already knew that the Defendant, Yero, Inc. was actively seeking to convert the customers of the BOB built by Plaintiff for the BOB it maintained its own economic interest.  Accordingly, Defendant, Yero, Inc.'s actions in this matter had made Plaintiff economic interest difficult to market and sell to an "outside" buyer and also less financially lucrative to Plaintiff.

150. As a proximate result of the conduct of the Defendant, Yero, Inc. as described and set forth herein Plaintiff was damaged in an amount in excess of the jurisdictional limits of this Court believed to exceed $750,000.00, the exact amount of which will be proven at the time of trial.  When Plaintiff has ascertained the full amount of his damages, he will seek leave of Court to amend this Complaint accordingly.

151.    Plaintiff has retained the service of the undersigned attorneys to represent him in connection with this matter and in doing so is obligated to pay a reasonable fee in connection herewith.

152.    Plaintiff may be entitled to an award of reasonable attorney's fees and the costs of this action pursuant to applicable and governing provisions of Florida Law.

153.    Plaintiff hereby reserves any and all rights to seek leave to amend this Count to add a claim for punitive damages pursuant to §762.72 Florida Statutes.

**WHEREFORE**, Plaintiff respectfully demands judgment for damages against Defendant, Yero, Inc. plus pre and post-judgment interest at the highest legal rate, reasonable attorney's fees, if applicable, and costs, if applicable, together with such other and further relief as this Court may deem just and equitable.

Dated this 9th day of July, 2018.

Tina El Fadel, Esquire
Attorney for Plaintiff
Fl. Bar #: 0091039
K/S, Attorneys at Law
4800 N. Federal Highway
Suite 103-B
Boca Raton, Florida 33431
P: (561) 939-8042
F: (561) 750-5083
eservice@ks-law.com

Filing # 75806243 E-Filed 08/01/2018 10:28:32 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

ALLWYN JOURDAN,

           Plaintiff,                    CASE NO.: 2018-023085-CA-01
                                            Division: Circuit Civil

vs.

ALLSTATE INSURANCE COMPANY,
a Foreign Illinois Registered Corporation,
CONRADO YERO, INC., a Florida for
Profit Corporation

           Defendants.

_____/

### WAIVER AND ACCEPTANCE OF SERVICE OF PROCESS

      Defendant, ALLSTATE INSURANCE COMPANY, hereby waives the necessity for personal Service of Process for the Complaint in this action and accepts in lieu thereof service upon its attorney, DANIEL R. BRYER, ESQUIRE, receipt of which is acknowledged by the undersigned signature. DANIEL R. BRYER, acknowledges receipt of the Complaint in this action by his signature as set forth below.

      I understand that a judgment may be entered against Defendant ALLSTATE INSURANCE COMPANY, if a written response is not served within twenty (20) days from the date I signed and acknowledged this Waiver and Acceptance of Service of Process.

Date: 8/1/18

Case 1:18-cv-23561-KMM   Document 12-1   Entered on FLSD Docket 09/12/2018   Page 29 of 36

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 18-23085 CA-31

ALLWYN JOURDAN,

     Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a
Foreign Illinois Registered Corporation,
CONRADO YERO, INC. a Florida for
Profit Corporation,

     Defendants.

_____/

### DEFENDANT'S MOTION TO DISMISS AND
### MOTION TO STRIKE DEMAND FOR ATTORNEYS' FEES

    **COMES NOW** Defendant, CONRADO YERO, INC. (hereinafter "Defendant"), by
and through its undersigned counsel, and pursuant to the Florida Rule of Civil Procedure
hereby files this Motion to Dismiss and Motion to Strike Demand Attorneys' Fees, and as
grounds states as follows:

### FACTUAL BACKGROUND

1. The instant matter arises out of an R3001S Exclusive Agency Agreement entered
   into between Plaintiff and co-defendant, Allstate Insurance Company, (hereinafter
   "Allstate"), dated August 1, 2013. Complaint at ¶ 14.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

2. From August 1, 2013 to October 14, 2015, Plaintiff operated an Allstate Exclusive Agency as an independent contractor insurance agency. Complaint at ¶ 18.

3. On October 14, 2015, Plaintiff was given a letter notifying him of his termination as an Allstate Exclusive Agent. Complaint at ¶ 34. Allstate then sent its agents to retrieve all of Plaintiff's files and ended Plaintiff's access to his Book of Business ("BOB"). Complaint at ¶ 36.

4. When Plaintiff was notified of his termination with Allstate, he was informed that he was to receive renewal business of the BOB for the ensuing 90 days and that Plaintiff was to be afforded 90 days, until January 31, 2016, within which to sell his economic interest. Complaint at ¶¶ 50, 70.

5. Plaintiff further alleged that during the 90-day period, he presented three outside buyers to Allstate to purchase his economic interest in the BOB, however they were all rejected by Allstate. Complaint at ¶ 59.

6. Plaintiff alleges that "Defendant knew that Plaintiff had an economic interest in the BOB and that Dario Rios was a part of the BOB and a part of the Plaintiff's economic interest." Complaint at ¶ 77.

7. Plaintiff further alleges that Allstate made Defendant aware of some of the customer in the BOB that was generated by Plaintiff, and further that Defendant directly solicited customer(s) in the BOB away from Defendant. Complaint at ¶¶ 82, 89, 149.

8. In his Complaint, Plaintiff alleged four counts, one of which, Count IV for Tortious Interference of Contractual Relationship, is directed towards Defendant. However,

2

**COLE, SCOTT & KISSANE, P.A.**

COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

the count against Defendant is without merit, and fails as a matter of pleading and substance, and should be dismissed on the following grounds.

## LEGAL STANDARD

The primary purpose of a motion to dismiss for failure to state a cause of action is to request the trial court to determine whether the complaint properly states a cause of action upon which relief can be granted and, if it fails to do so, to enter an order of dismissal. *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022 (Fla. 4th DCA 1996). Under Florida law, mere legal conclusions inserted in a complaint are insufficient to state a cause of action, unless they are substantiated by allegations of ultimate fact. *Doyle v. Flex*, 210 So. 2d 493 (Fla. 4th DCA 1968). Stated differently, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief. *Kreizinger v. Schlesinger*, 925 So. 2d 431 (Fla. 4th DCA 2006); *Sanderson v. Eckerd Corp.*, 780 So.2d 930 (Fla. 5th DCA 2001). Further, "litigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared." *Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corporation*, 537 So. 2d 561 (Fla. 1988). In making this determination, the trial court must confine its review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept as true all well-pleaded allegations. *Provence*, 676 So. 2d at 1024; *City of Gainesville v. State*, 778 So. 2d 519, 522 (Fla. 1st DCA 2001); *Cintron v. Osmose Wood Preserving, Inc.*, 681 So. 2d 859, 860–61 (Fla. 5th DCA 1996).

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

## ARGUMENT

### I.   Plaintiff Fails to State a Cause of Action for Tortious Interference

This Honorable Court should dismiss Count IV of Plaintiff's Complaint because the same does not allege the ultimate facts which establish each and every essential element of a cause of action for tortious interference with a contractual relationship.

To maintain a claim for tortious interference, a plaintiff must show: (1) the existence of a business relationship or contract to which a plaintiff is a party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contractual breach; (4) the absence of justification or privilege; and (5) the plaintiff suffered damages from the breach. *See McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. 1st DCA 2008); *citing Florida Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985).

It is also important to note that the gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of another. *Davis*, 606 So. 2d at 397, *citing Dade Enterprises, Inc. v. Wometco Theatres, Inc.*, 160 So. 209, 210 (Fla. 1935); *Steffan v. Zernes*, 124 So. 2d 495, 498 (Fla. 1st DCA 1960).

Plaintiff's Complaint attached the Contract which was allegedly breached due to Defendant's interference, thereby pleading the existence of a contract. However, Plaintiff fails to allege any facts which establishes that Defendant "intentionally" procured the alleged breach of such contract. Plaintiff pleads that he was fired on October 14, 2015, and that Allstate sent its agents to retrieve all of its files and ended Plaintiff's access to the BOB. Complaint at ¶¶ 34, 36. Further, Plaintiff was provided an additional 90 days to sell

4

his BOB, Complaint at ¶ 50. However, Plaintiff has not plead that this Defendant did anything that prevented Plaintiff from doing so. In fact, Plaintiff plead that he attempted to sell his BOB to three outside buyers, but Allstate unreasonably refused to consent to the sale. Complaint at ¶¶ 59, 79, 94-96, 111. Thus, there is no allegation that the Defendant's action did anything to cause Allstate to refuse to consent to the sale.

Moreover, Plaintiff states that *Allstate* "disclosed the name, address, policy information of Dario Rios" to Defendant. Complaint at ¶ 83 (emphasis added). Nowhere does Plaintiff factually allege Defendant's intentions or malicious interference with the Agreement in place between Allstate and Plaintiff. Plaintiff simply alleged that Defendant "intentionally and unjustifiably interfered with the relationship…" and does not provide any facts to support this allegation. Complaint at ¶ 147. This allegation is a mere conclusory allegation, which is not supported or pled by any additional allegation. *See W.R. Townsend Contr., Inc. v. Jensen Civ. Cnstr., Inc.* 728 So. 2d 297, 300 (Fla. 3d DCA 1999); *Reina v. Gingerale Corp.*, 472 So. 2d 530, 531 (Fla. 3d DCA 1985) (holding that a claim cannot withstand dismissal if it merely, baldly, alleges legal conclusions without the essential underlying facts supporting these conclusions). In that regard, it follows that Plaintiff's Complaint failed to establish an essential element needed in order to adequately plead a cause of action for tortious interference with a contract, namely, that Defendant has not acted with malicious intent.

As previously stated, Plaintiff alleges that Allstate provided Defendant with the name, address and policy information of Dario Rios. Complaint at ¶ 83. This allegation on its face provides Defendant a justification to contact customers within Plaintiff's BOB. *See Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980) (finding that

justification is better understood as a showing that the interference is privileged by reason of the interests furthered by his conduct).

Additionally, Plaintiff's Complaint alleges that Plaintiff suffered damages arising from the alleged breach of the Agreement. Specifically, Plaintiff alleged that he suffered damages due to Defendant's conduct. Complaint at ¶ 150. However, Plaintiff also alleged that within the 90 days to which he was permitted to sell his BOB, Allstate had not approved any of the buyers presented by Plaintiff. Complaint at ¶ 94. These allegations in and for themselves permit the reasonable inference that Plaintiff's alleged damages did not arise from any of Defendant's conduct, but that rather Plaintiff's damages arose from his failure to present viable buyers for the BOB to Allstate within the 90-day period and/or Allstate's alleged unreasonable refusal to consent to the same. Plaintiff has failed to plead and identify how the breach caused the customers in the BOB to object to the potential sale. For example, no allegations are plead with respect to what the customers did in response to the January 25, 2016 letter and how that caused Plaintiff to incur damages. Therefore, the cause of Plaintiff's damage as plead by Plaintiff is due to Allstate's refusal to agree to the potential sales, rather than any action that Defendant took. Complaint at ¶¶ 94-96, 111, 112.

Conclusively, the allegations contained within Plaintiff's Complaint are conclusory in nature, and thus do not allege the ultimate facts establishing each essential element of a cause for Tortious Interference with a Contract. For that reason, this Honorable Court should dismiss such cause action from Plaintiff's Complaint.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

## II.   <u>Motion to Strike Demand for Attorneys' Fees</u>

In the alleged count against Defendant, Plaintiff alleges that he is entitled to attorney's fees and costs, and demands such in the Complaint. However, attorney's fees are awarded only when authorized by contract or by statute. *Trytek v. Gale Industries, Inc.*, 3 So. 3d 1194, 1198 (Fla. 2009); *Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004). Moreover, it is improper to award fees to the prevailing party without such authority. *North Lakeland Pain & Trauma, Inc. v. Benson*, 813 So. 2d 1075, 1076 (Fla. 2d DCA 2002). Here, the Plaintiff has failed to provide a contractual or statutory basis that would entitle him to attorney's fees and costs. Therefore, Plaintiffs' claim for attorneys' fees and costs should be stricken.

Defendant also notes that Plaintiff has not currently pled punitive damages against this Defendant.

## <u>CONCLUSION</u>

Conclusively, Plaintiff's Complaint merely alleges legal conclusions without the essential underlying facts plead to support such conclusions, and thus, it follows that Plaintiff's cause of action cannot withstand dismissal, and the claim for fees should be stricken.

**WHEREFORE**, Defendant respectfully request this Honorable Court to enter an Order granting the instant Motion, and award any other relief this Court deems just and proper.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

CASE NO.: 18-23085 CA-31

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of August, 2018, a true and correct copy of the foregoing was filed with the Clerk of Miami-Dade County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to the following parties registered with the e-Filing Portal system: Tina El Fadel, Esq., K/S Attorneys at Law, 4800 North Federal Highway, Bldg. B - Suite 103, Boca Raton, FL 33431, (561) 939-8042/(561) 750-5083 (F), Attorney for Plaintiff, Allwyn Jourdan.

COLE, SCOTT & KISSANE, P.A.
**_Counsel for Defendant, CONRADO YERO, INC._**
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (305) 350-5365
Facsimile   (305) 373-2294
Primary e-mail: blake.sando@csklegal.com
Secondary e-mail: maria.vera@csklegal.com

By:   s/ Blake S. Sando_____
BLAKE S. SANDO
Florida Bar No.:  939293
MARIA D. VERA
Florida Bar No.:  1002657

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX